575 P.2d 960
**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Walter PADILLA, Defendant-Appellant.**

**No. 3157.**

Court of Appeals of New Mexico.

Feb. 14, 1978.

Ken Cullen, Albuquerque, Mario J. Martinez, El Paso, Tex., for defendant-appellant.

Toney Anaya, Atty. Gen., Michael E. Sanchez, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

Defendant was convicted of two counts of trafficking in heroin. The count 1 sale occurred January 11, 1977; the count 2 sale occurred February 10, 1977. The appellate issues involve: (1) jury selection; (2) entrapment; and (3) § 54–10–13(D), N.M.S.A. 1953 (Repl. Vol. 8, pt. 2, Supp.1975).

*Jury Selection*

Defendant has four contentions concerning selection of the jury.

■ (a) Prior to trial, defendant moved that a new jury panel be selected because a case, similar to defendant's case, had been tried a short time before. The defendant in the prior case was named Tapia. Defendant claimed the entire panel in the *Tapia* case knew the basic contentions of the State and defense, that the result of Tapia's trial was common knowledge in the community and that because of the similarities between the *Tapia* case and defendant's case, none of the panel in the *Tapia* case could approach defendant's case with an open mind. This motion was denied; however, the jurors and alternates in the *Tapia* trial were excused in advance of defendant's trial.

During voir dire, fifteen prospective jurors acknowledged they knew of the outcome in the *Tapia* case. These fifteen are not identified. The transcript shows they were asked whether they felt the results in the two cases should be consistent, none so indicated. Defense counsel then stated that since there were "no hands", he interpreted the lack of response to mean that the fifteen could judge defendant's case "separately and apart from the result" in the *Tapia* case. Defense counsel then stated if his interpretation was wrong, he needed to know. There was no response.

The trial court excused prospective jurors that indicated they were biased against heroin, that indicated they could not be fair and impartial, or that had other reasons for not serving. He also excused a member of the panel who sat in the courtroom, as a spectator, during the *Tapia* trial. At least 22 members of the panel were excused.

The record does not show that any member of the jury panel who knew the outcome of the *Tapia* case actually served on the jury that convicted defendant. The record does show that no member of the *Tapia* jury served as a juror at defendant's trial. The record also shows that the trial court excused prospective jurors whose answers on voir dire indicated they might not be fair and impartial. Defendant does not claim that any juror that served at defendant's trial was unfair or partial. *State v. Gonzales,* 82 N.M. 388, 482 P.2d 252 (Ct. App.1971). This record does not show that the trial court erred in failing to call a new jury panel for defendant's trial. Compare *State v. Herrera,* 82 N.M. 432, 483 P.2d 313 (Ct.App.1971), cert. denied, 404 U.S. 880, 92 S.Ct. 217, 30 L.Ed.2d 161 (1971).

▪ (b) The trial court excused one prospective juror because he had been convicted of a felony in 1958. The trial court explained that he did not know whether the person excused was eligible to serve as a juror and did not want any questions of eligibility to arise later. Defendant asserts this was error but does not explain how excusing this person was an abuse of the trial court's discretion. Section 19–1–2, N.M.S.A.1953 (Repl. Vol. 4, Supp.1975); *State v. Cutnose,* 87 N.M. 300, 532 P.2d 889 (Ct.App.1975).

▪ (c) After the trial jury and alternates were sworn, but before any evidence was taken, the trial court allowed the district attorney to peremptorily challenge one juror. The juror so challenged had been charged with a felony; a preliminary hearing had been held and the juror bound over for trial; thereafter the juror pled guilty to a misdemeanor and the felony charge was dismissed. The district attorney sought dismissal of the juror because he had been the one who had prosecuted the juror. The trial court did not, however, allow the challenge for this reason. The trial court allowed the challenge because the juror had failed to acknowledge any prior association with the district attorney. The place of this juror was taken by the first alternate. The trial court did not err in excusing the juror who failed to acknowledge his prior prosecution and in substituting an alternate juror. Our reason is given in the next paragraph.

▪ (d) During the course of the trial, the trial court excused an additional juror whose place was taken by the second alternate. On voir dire, this juror had acknowledged that she knew defendant's mother, but felt she could serve fairly and impartially. During the trial she changed her mind and felt she could not be fair and impartial. See *State v. Bojorquez,* 88 N.M. 154, 538 P.2d 796 (Ct.App.1975). Rule of Crim.Proc. 39(e) provides that alternate jurors "shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties." It is for the trial court to determine whether a juror should be replaced because disqualified to perform the duties of a juror. The trial court's ruling will be reversed only for abuse of discretion. *State v. Verdugo,* 78 N.M. 762, 438 P.2d 172 (Ct.App.1968). The record does not show an abuse of discretion in excusing either of the two jurors and replacing them with alternate jurors.

*Entrapment*

The trial court refused to give an entrapment instruction as to count 1; the jury was instructed on entrapment as to count 2. See U.J.I. Crim. 41.35. Defendant claims he was entrapped as a matter of law; alternatively, he claims the trial court erred in refusing to instruct on entrapment as to count 1.

The focal issue in entrapment is the intent or predisposition of the defendant to commit the crime. *State v. Fiechter,* 89 N.M. 74, 547 P.2d 557 (1976). If the evidence shows that the defendant was given an opportunity to commit the crime and no undue persuasion or enticement was utilized, there is no factual basis for the entrapment claim. *State v. Akin,* 75 N.M. 308, 404 P.2d 134 (1965). The evidence need not be set out in this opinion.

The evidence as to count 1 does not show a factual basis for an entrapment instruction and no basis for holding there was entrapment as a matter of law. So holding, we do not reach the contention of whether the defense of entrapment is unavailable if the defendant, instead of denying the transaction, testifies that he does not remember it. See *State v. Martinez,* (Ct.App.) No. 3031, decided December 13, 1977, certiorari granted January 17, 1978.

The evidence was conflicting as to whether defendant was induced to commit the count 2 crime. Accordingly, there was no entrapment as a matter of law; rather, that issue was properly submitted to the jury. *State v. Fiechter,* supra.

*Section 54–10–13(D), supra*

This section states:

D. No law enforcement officer shall conduct a surveillance on a drug abuse rehabilitation program facility for the purpose of obtaining names and other information concerning a person seeking assistance at the facility.

The count 2 sale occurred outside the building of an organization conducting a drug rehabilitation program. There is evidence that the informer had been to the rehabilitation center several times and evidence that defendant sought treatment at the center. There is also evidence that the informer wanted to go to the center on the date of the count 2 sale to buy heroin from the defendant.

Defendant asserts § 54–10–13(D), supra, was violated by the informer and for this reason his count 2 conviction should be reversed.

We do not agree with the State's contention that the informer should not be considered a "law enforcement officer" for the purposes of § 54–10–13(D), supra. The informer was on the state payroll at all material times; he infiltrated the local drug community on behalf of the state and was actively seeking to purchase drugs. In these circumstances he is to be considered a law enforcement officer within the meaning of the statute. *Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); *People v. Dollen,* 53 Ill.2d 280, 290 N.E.2d 879 (1972).

However, the facts do not show that the informer violated the statute; specifically, the facts do not show the informer conducted a "surveillance . . . for the purpose of obtaining names and other information concerning a person seeking assistance at the facility." The uncontradicted evidence is that by the time the informer started going to the center, "I already knew everybody here."

There being no violation of § 54–10–13(D), supra, we do not consider whether a violation of that statute would be a sufficient basis for reversing a trafficking conviction.

The judgment and sentences are affirmed.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.