762 P.2d 898

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Charlie M. RODRIGUEZ,
Defendant–Appellant.**

**No. 10355.**

Court of Appeals of New Mexico.

Aug. 4, 1988.

Certiorari Denied Sept. 9, 1988.

Hal Stratton, Atty. Gen., Bill Primm, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Hollis A. Whitson, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

DONNELLY, Chief Judge.

Defendant appeals from his convictions on four counts of distribution of an imitation controlled substance contrary to NMSA 1978, Section 30–31A–4 (Cum.Supp. 1985). Defendant raises three issues on appeal: (1) whether the trial court committed fundamental error by asking defendant to answer written questions submitted by individual jurors; (2) whether defendant was denied effective assistance of counsel; and (3) whether the trial court erred in refusing to instruct the jury on the defense of entrapment prior to defendant moving to reopen. We affirm.

The New Mexico State Police and the Eddy County Sheriff's Department were jointly involved in an undercover narcotics investigation in Eddy County, New Mexico,

during the fall of 1986. Jack Childress, an Eddy County undersheriff, testified that defendant agreed to assist him and undercover agent John Sena in obtaining evidence against suspected drug dealers. Childress and Sena testified that defendant's role in the undercover operation consisted of acting as a confidential informant, providing names of individuals suspected to be involved in drug dealing, introducing Sena to persons from whom Sena might purchase drugs, and arranging and assisting in drug purchases so that Sena could obtain evidence of drug dealing.

Sena testified that defendant was told he was to handle neither the drugs nor money used in the undercover operation. Sena further testified he instructed defendant that when a drug purchase occurred, defendant should leave the area, if possible, and that he should not participate in any criminal activity. Childress and Sena testified that they relied on defendant to arrange purchases from suspected drug dealers and did not direct defendant on the details of the transactions. They also testified that defendant never informed either of them that he was involved in selling imitation controlled substances.

In August 1986, defendant met undercover agent John Saint. Neither the defendant nor Saint knew that the other was acting as a police informant. Thereafter, defendant and Denise Morales went to a hotel room where Saint was living. Saint testified that he asked defendant if he knew where Saint could find some drugs. Some days later, according to Saint, the defendant, Denise Morales, and another man visited the hotel where Saint lived. Defendant and the other man waited in a truck while Morales went to Saint's room. Saint testified that Morales asked him if he wanted to buy some marijuana or "tystick". Saint agreed. The two went downstairs and Saint purchased the substance from defendant for $75.00. When analyzed, the substance was found to be an imitation controlled substance. Saint further testified that at this time he also made a down-payment of $25.00 on a purchase of heroin. Defendant met Saint later in the day and delivered a package purporting to

be heroin and collected another $100.00. When analyzed, the substance was determined not to be heroin, but an imitation. Saint testified that on two other occasions, defendant sold him substances purported to be heroin. The substances, when analyzed, were found to be imitation narcotic drugs.

Defendant elected not to testify at his trial and at the close of the evidence requested that the jury be instructed on the defense of entrapment. Defendant argued that the instruction was proper because the evidence created an inference that it was necessary for him to sell imitation drugs in order to establish his credibility with persons suspected of drug dealing. The trial court refused to give the requested entrapment instruction, finding that: (1) because defendant did not testify and admit to the acts, he was not entitled to an entrapment instruction; and (2) the testimony of other witnesses at trial did not support the giving of the instruction.

Following the court's ruling, defense counsel moved to reopen defendant's case in order to present testimony from defendant concerning entrapment. The trial court granted the motion. At this point, defendant took the stand and admitted that he sold imitation controlled substances to Saint. Defendant also testified that he was told by Saint that there were people in town who were waiting for a big delivery of heroin and that these people needed something to tide them over until the shipment arrived. Defendant further testified that he would not have sold the imitation narcotics but for the fact that he was assisting the undercover agents, that he felt compelled to sell imitation drugs in order to arrange drug purchases, and that he had sold imitation drugs to Saint hoping that he could obtain information concerning the alleged heroin shipment.

Defendant conceded that he did not tell either Childress nor Sena that he had sold imitation controlled substances to Saint. On cross-examination, defendant admitted that he had been a heroin addict. Defendant also stated that he believed he would go to prison if he did not cooperate with

the police and that he did not know that selling imitation controlled substances was illegal.

At the conclusion of defendant's cross-examination, the trial judge asked defendant several questions which had been submitted by individual jurors. The following exchange took place:

Judge: The jurors have a couple of questions. Most of them have been answered, but one juror wants to know: "You said you're not under the influence of heroin right now?"

Defendant: No, sir, I've been clean since the day I got arrested.

Judge: "And how did you get off the drug?"

Defendant: Once I would de-tox when I was in jail before I bonded out. Then, I got involved in my church and got involved in [Narcotics Anonymous] and been going to them two, three times—well, three times a week. Just been doing some real positive things in my life to stay off. I go to re-integration center here in Carlsbad. Help out the kids there. Just things that will help me keep my mind off of that—off the addictions—doing different things that—so I won't have to be out on the streets anymore.

Judge: Alright, and another juror wants to know: "How would a person be physically affected by injecting an imitation controlled substance?"

Defendant: I don't know.

Judge: Thank you. That's all the questions I have. Do you gentlemen have anything to ask in view of what the Court has asked?

Counsel: No, your honor.

Defense counsel did not object to either the procedure used by the trial court or the specific questions asked, nor did counsel move to strike or request any limiting instruction. After defendant left the stand, the court instructed the jury and gave defendant's requested instruction concerning the defense of entrapment.

## I. JUROR QUESTIONS

Defendant claims the trial court committed fundamental error by requiring him to answer questions submitted by individual jurors. Whether fundamental error has occurred involves a determination of whether the acts complained of deprived defendant of a fair trial. *See State v. Diaz*, 100 N.M. 210, 668 P.2d 326 (Ct.App.1983); *State v. Vallejos*, 86 N.M. 39, 519 P.2d 135 (Ct.App. 1974).

Under SCRA 1986, 14–101, a juror who desires to ask questions of a witness during trial may submit the proposed question or questions in writing to the court. The name of the juror submitting the inquiry must appear below the question. The trial judge must first pass upon the propriety of the question before it can be asked in open court. The court may then ask the question posed by the juror if it deems the question to be proper. Whether or not the question should be asked is a matter entrusted to the discretion of the trial court. *See* SCRA 1986, 11–611; *see also* SCRA 1986, 11–103(A) (error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected).

█ As a general rule a judge may ask questions of a witness as long as an attitude of impartiality is preserved. *See State v. Crump*, 97 N.M. 177, 637 P.2d 1232 (1981); *City of Portales v. Bell*, 72 N.M. 80, 380 P.2d 826 (1963); *see also Vigil v. Johnson*, 60 N.M. 273, 291 P.2d 312 (1955). Similarly, submission of jurors questions to a witness is a matter entrusted to the sound discretion of the trial court. *See DeBenedetto v. Goodyear Tire & Rubber Co.*, 754 F.2d 512 (4th Cir.1985); *United States v. Callahan*, 588 F.2d 1078 (5th Cir.), *cert. denied*, 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979). Absent compelling circumstances, some courts discourage questions by jurors. *See State v. Taylor*, 25 Ariz.App. 497, 544 P.2d 714 (1976);

*Cheeks v. State,* 266 Ind. 190, 361 N.E.2d 906 (1977). *See generally* Annotation, *Propriety of Jurors Asking Questions in Open Court During Course of Trial,* 31 A.L.R.3d 872 (1970).

Defendant also argues that in New Mexico it is improper for the trial court to have any communications with the jury except in open court and in the presence of the accused and his counsel. Defendant relies on *Hovey v. State,* 104 N.M. 667, 726 P.2d 344 (1986) and *State v. Orona,* 92 N.M. 450, 589 P.2d 1041 (1979) as support for his contention that the trial court erred when it asked the jurors questions without first informing counsel of the nature of the jurors' communication with the court and without allowing opportunity for objections outside the presence of the jury. *See Hovey v. State; State v. Orona.* *Hovey* and *Orona* concerned juror communications after deliberations had begun and defendant was no longer present in the courtroom. The presumption of prejudice to defendant from communications outside his presence, which existed in *Hovey* and *Orona,* does not arise in this case because defendant was present in the courtroom at the time the communications took place.

■ Defendant also relies on *Hovey* in support of his contention that no objection from defense counsel was necessary to preserve error. He argues that because the right to be advised of juror communications is fundamental and personal to defendant, the claimed error cannot be waived. Defendant further argues that the questioning placed defense counsel in the untenable position of choosing between remaining silent or objecting to the jurors' questions and, thereby, offending the jurors. We disagree. Defense counsel had an opportunity to object and could have requested a bench conference or to be heard outside the presence of the jury.

■ Defendant additionally contends that the nature of the questions submitted by the jurors constituted fundamental error because the inquiries probed the issue of his character, the degree of his alleged criminality, and were aimed at detecting whether he had a "bad heart." *See* SCRA 1986, 11–402, 11–403, and 11–404. We find no prejudice resulting from the court's questioning. Defendant's earlier testimony indicated that he had used heroin and had been a drug addict. Under these facts, the follow-up questions submitted by the jurors were not improper and reasonably referred to matters related by the defendant during his testimony on direct examination.

While the trial court must carefully consider the possible prejudice which may result from questions submitted by jurors to a criminal defendant, under the facts of the present case, there has been no showing that defendant was prejudiced or that the questions resulted in denial of a fair trial. *See State v. Crump; De Benedetto v. Goodyear Tire & Rubber Co.; State v. Taylor.* We find no error in the questions posed by the trial court and as submitted by jurors.

## II. CLAIM OF INEFFECTIVE ASSISTANCE

■ Defendant argues that he was denied effective assistance of counsel due to his attorney's failure to object to the questions of the jurors. A defendant seeking to establish a claim of ineffective assistance of counsel must show that his attorney failed to exercise the skill, judgment and diligence of a reasonably competent defense attorney. *United States v. Baca,* 687 F.2d 1356 (10th Cir.1982); *State v. Orona,* 97 N.M. 232, 638 P.2d 1077 (1982). Defendant has failed to make the requisite showing.

A failure to object does not establish ineffective assistance of counsel. *State v. Chacon,* 80 N.M. 799, 461 P.2d 932 (Ct.App. 1969); *State v. Gutierrez,* 79 N.M. 732, 449 P.2d 334 (Ct.App.1968). The decision of whether or not to object falls within the ambit of trial tactics. Ineffectiveness of counsel is not necessarily established even when there is a showing of improvident strategy or unsuccessful tactics. *State v. Trejo,* 83 N.M. 511, 494 P.2d 173 (Ct.App. 1972); *State v. Chacon.* Moreover, the questions provided defendant with an opportunity to inform the jury how he had

overcome his drug habit and how he had become involved in church activities and in helping other individuals to overcome their drug problems. Defendant's claim under the facts herein does not constitute a basis for reversal. *See State v. Helker*, 88 N.M. 650, 545 P.2d 1028 (Ct.App.1975), *cert. denied*, 429 U.S. 836, 97 S.Ct. 103, 50 L.Ed.2d 102 (1976).

### III. ENTRAPMENT

At the close of testimony the trial court indicated that it would deny defendant's requested instruction on the defense of entrapment because there was insufficient evidence to support the submission of such instruction. Defendant then successfully moved to reopen the case.

Defendant argues that the evidence presented prior to his motion to reopen the case, without his own testimony, was sufficient to support his requested entrapment instruction and that the trial court erred in initially refusing the tendered instruction. Defendant argues that he was also prejudiced by having to reopen the case and take the witness stand in his own defense.

■■ Defendant is entitled to an instruction on entrapment only if there is evidence to support it. *See State v. Garcia*, 79 N.M. 367, 443 P.2d 860 (1968). Entrapment requires a showing that a law enforcement officer initiated a criminal act or used undue persuasion or enticement in order to induce the defendant to commit a crime and that, without such conduct, the defendant would not have committed the crime. *See* SCRA 1986, 14–5160; *State v. Fiechter*, 89 N.M. 74, 547 P.2d 557 (1976).

Defendant relies on the testimony of Childress and Sena that defendant was instructed to arrange and assist drug purchases and that he was not told specifically how he was to arrange the purchases. Defendant argues that an inference can be drawn from this evidence that he was required to sell imitation drugs as part of his work as a confidential informant; thus, he was entitled to an entrapment instruction.

■■ Where the evidence presented indicates that defendant merely was given an opportunity to commit a crime and that no undue persuasion or enticement was utilized, there is no factual basis for a claim of entrapment. *State v. Padilla*, 91 N.M. 451, 575 P.2d 960 (Ct.App.1978); *see State v. Mordecai*, 83 N.M. 208, 490 P.2d 466 (Ct.App.1971). In the present case, prior to defendant's testimony, there was no evidence from which a reasonable inference of undue persuasion or enticement to commit the offenses charged could be drawn. To the contrary, the evidence shows that, without the knowledge of the law enforcement personnel he was working with, defendant was active in distributing imitation controlled substances. The trial court properly denied defendant's request for an entrapment instruction prior to allowing defendant to reopen the case.

■■ Although we agree that testimony from an accused is not a prerequisite to the giving of an entrapment instruction if other evidence supports the giving of such instruction, the defense is not available to a defendant who denies committing the offense, because its invocation necessarily assumes the commission of at least some elements of the offense. *United States v. Mabry*, 809 F.2d 671 (10th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 33, 98 L.Ed.2d 164 (1987); *State v. Garcia*.

■■ Defendant additionally asserts that *Baca v. State*, 106 N.M. 338, 742 P.2d 1043 (1987) is controlling under the facts herein. We disagree. In *Baca*, the court expanded the defense of entrapment, holding that "a criminal defendant may successfully assert the defense of entrapment, *either* by showing lack of predisposition to commit the crime for which he is charged, *or*, that the police exceeded the standards of proper investigation * * * *" *Id.* at 341, 742 P.2d at 1046 (emphasis in original). *Baca* is factually distinguishable from the instant case. Moreover, *Baca* was given modified prospective application, so that its ruling only applies to those cases tried after the effective date of the decision. Here, defendant's trial took place in May 1987 and the *Baca* decision was filed in September 1987. *Baca* does not apply in

this case. *See Alexander v. Delgado*, 84 N.M. 717, 507 P.2d 778 (1973).

Finally, defendant argues that he was forced to abandon his constitutional right to remain silent and that he was required to testify in order to have the jury instructed on his theory of defense. In light of our determination that there was insufficient evidence to support defendant's initial request for an entrapment instruction, defendant was merely faced with a choice of either trying to present some evidence of entrapment through his own testimony, or foregoing his entrapment defense. This does not constitute a violation of defendant's fifth amendment right to remain silent. *See State v. Smith*, 88 N.M. 541, 543 P.2d 834 (Ct.App.1975).

Defendant's convictions and sentences are affirmed.

IT IS SO ORDERED.

GARCIA and APODACA, JJ., concur.