This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO**,

Plaintiff-Appellee,

v.                                                    **No.   30,317**

**JOSE LUIS CORTINA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Douglas R. Driggers, District Judge**

Gary K. King, Attorney General
Margaret McLean, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Acting Chief Public Defender
Carlos Ruiz de la Torre, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**BUSTAMANTE, Judge.**

{1}      Convicted after two trials of twelve counts of criminal sexual penetration of a minor and six counts of criminal sexual contact with a minor, Jose Luis Cortina (Defendant) appeals.  Defendant alleges a number of errors by the district court, as well as violation of his speedy trial and due process rights, insufficiency of the evidence, and ineffective assistance of counsel.  We reverse his convictions for one count of vaginal penetration, one count of anal penetration, and one count of criminal sexual contact.  We affirm the remainder of the convictions.

## I.     BACKGROUND

{2}      Defendant was indicted in August 2005 on twenty-seven counts, including criminal sexual penetration of a minor (CSPM) and criminal sexual contact with a minor (CSCM).  The indictment alleged one act of vaginal penetration, one act of anal penetration, and one act of touching the victim's (Child's) breasts each month from September 2004 to May 2005.  After a three-day trial in March 2007, the district court declared a mistrial when the jury could not agree on the verdict.  The State filed a nolle prosequi dismissing nine counts of the indictment corresponding to December 2004, January 2005, and February 2005.  A second trial on the remaining eighteen counts took place nearly a year later.  Defendant was convicted of twelve counts of CSPM and six counts of CSCM.  Additional facts are provided hereafter as necessary for our discussion of Defendant's arguments.

## II.    DISCUSSION

{3}    Defendant makes nine separate arguments. Four address the district court's denial or grant of motions at trial and are reviewed together for an abuse of discretion. We review a fifth argument related to the district court's denial of Defendant's motion for a mistrial for fundamental error. Next we review Defendant's two constitutional arguments de novo. Finally, we assess whether any rational trier of fact could have convicted Defendant based on the evidence presented and whether Defendant was ineffectively represented at trial.

{4}    Defendant alleges that the district court abused its discretion by (1) denying Defendant's motion for an independent psychological evaluation of Child, (2) granting the State's motion to exclude expert testimony on child victims of sexual abuse, (3) granting the State's motion to exclude expert testimony about Defendant's lack of pedophilic tendencies, and (4) denying Defendant's motion for a mistrial after a witness testified that Defendant was incarcerated.

{5}    We review the district court's grant or denial of evidentiary motions for an abuse of discretion. *State v. Layne*, 2008-NMCA-103, ¶ 6, 144 N.M. 574, 189 P.3d 707; *see State v. Ruiz*, 2001-NMCA-097, ¶¶ 38, 40, 131 N.M. 241, 34 P.3d 630. Similarly, the grant or denial of a motion for mistrial is within the district court's discretion. *State v. Ruiz*, 2003-NMCA-069, ¶ 6, 133 N.M. 717, 68 P.3d 957. "An

abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citations omitted).

**Independent Psychological Evaluation of Child**

{6}     Defendant argues that the district court erred in denying his motion for a forensic psychological evaluation of Child. He contends that the district court's denial "deprived [him] of his constitutional right to confront the [S]tate's evidence in the way necessary to his defense[,]" because an evaluation "could have illustrated ways in which [C]hild's recollection and testimony might have been distorted by . . . [a] suggestive pamphlet and/or interactions with her grandmother, or through coaching." The State responds that "Defendant made no showing . . . that a psychological examination would have led to the discovery of information relevant to the issue of [Child]'s credibility" and that, therefore, "[t]he district court properly exercised its discretion to deny Defendant's proposed fishing expedition into [Child]'s psychology."

{7}     When a victim's mental state is an essential element of the crime or placed in issue by the State, it is an abuse of discretion to deny a motion for a psychological

4

examination of the victim. *See Ruiz*, 2001-NMCA-097, ¶ 38. When this is not the case, a defendant must demonstrate a "compelling need," which exists when "the probative value of the evidence reasonably likely to be obtained from the examination outweighs the prejudicial effect of such evidence and the prosecutrix' right of privacy." *Id.* ¶ 40 (internal quotation marks and citation omitted). This balancing test is within the discretion of the district court. *Id.*

{8}    Here, Child's mental state is not an essential element of the crimes charged, nor does Defendant argue that the State has placed her mental state in issue. Rather, he argues that he demonstrated a compelling need for the examination. We do not agree. Defendant argued in his motion that the purpose of the examination was

> to determine whether [Child] was coached; whether [Child's] account of the alleged incident is reliable and valid; whether her ability to distinguish fact from fantasy is reliable and valid; whether her statements are consistent from the safe house interview and the victim assessment forensic evaluation; . . . whether she has strong emotions and or [sic] feelings about the alleged incidents which occurred and lastly to determine whether [Child] shows any evidence of malingering.

At the motion hearing, Defendant argued that Child's lack of detail about the dates of the offenses, inconsistencies in her safe house interview, and irregularities in the safe house interview suggested the need for a psychological examination. He argued that the examination would "determine . . . whether she can differentiate between fact and fantasy, . . . whether she was coached, [and] whether she has a good memory" and that

an examination "would . . . help with the organizational structure of the trial." Defendant does not explain on appeal why investigation and cross-examination were inadequate to explore these issues. Thus, Defendant fails to "show[] a reasonable likelihood that a psychological examination would have produced probative evidence relating to [Child]'s credibility—much less that the probative evidence would have outweighed the prejudicial effect of the evidence and [Child]'s privacy interests." *State v. Dombos*, 2008-NMCA-035, ¶ 31, 143 N.M. 668, 180 P.3d 675.

{9} To the extent that Defendant asks that we consider a Kansas case that sets out a six-part test for when there is a compelling need for a psychological examination, we decline to do so. *See State v. Price*, 61 P.3d 676, 681-82 (Kan. 2003). The test in New Mexico has been succinctly stated, and there is no reason for us to turn to other jurisdictions. *See Ruiz*, 2001-NMCA-097, ¶ 40. We find no error in the district court's denial of Defendant's motion for a psychological examination of Child.

**Expert Testimony Regarding Child's Safe House Interview**

{10} Defendant next argues that the district court erred when it granted the State's motion to exclude testimony by a psychologist whom Defendant asked to provide an "opinion about the evidence obtained during a [s]afe [h]ouse interview of [Child]." He maintains that this Court should order a new trial because exclusion of the expert's testimony prevented him from "demonstrat[ing] that [Child] might have been coached

6

or at least influenced to make statements against him by her maternal grandmother." The State argues that Defendant's argument is unpreserved either because Defendant failed to provide the district court with enough information on which to rule on the motion or because there was no post-ruling offer of proof in the record from which this Court may assess the excluded evidence.

{11} On appeal, Defendant argues that the expert's "testimony would have laid a necessary predicate and important framework in which the jury might have regarded important issues present in the case concerning the context in which [Child] made statements." Defendant argues that "[t]he defense's strategy in this case was no different from that in [*State v.*] *Campbell*," in which this Court held that expert testimony on inaccurate reporting of abuse by children and possible motivations for such reporting should have been admitted when the defense asserted that a child witness had been influenced by family members or other sources. 2007-NMCA-051, ¶ 20, 141 N.M. 543, 157 P.3d 722. At a hearing on the State's motion, however, Defendant did not make these arguments. Instead, he argued that the expert would address "how should . . . a victim of this type with these kinds of allegations, how should she . . . react, what should they expect the emotional impact, what could the absence of—no emotionality suggest." He also suggested that the expert would comment on Child's testimony in court. Because Defendant did not make this

argument to the district court, it is not preserved for appeal. *Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct. App. 1987) ("To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court.").

{12} Even if we construed Defendant's arguments at trial and on appeal as the same, we agree with the State that we cannot review the exclusion of the expert's testimony in the absence of an offer of proof as to the substance of that testimony. Defendant's description at the hearing of what the expert would address is not sufficient to permit us to evaluate whether the testimony would have been admissible or not, and therefore to determine whether it was error to exclude it. *See State v. Ortiz*, 88 N.M. 370, 375, 540 P.2d 850, 855 (Ct. App. 1975) (declining "to guess as to what questions the defendant was prevented from asking" when the defendant did not make an offer of proof following a sustained objection); *State v. Jackson*, 88 N.M. 98, 100, 537 P.2d 706, 708 (Ct. App. 1975) ("The record before us is void of any indication whatsoever of how [the witness] might have responded to counsel's inquiry, and the alleged error raised under this point is consequently not capable of resolution on appeal."), *overruled on other grounds by State v. Fiechter*, 89 N.M. 74, 77, 547 P.2d 557, 560 (1976).

**Expert Testimony Regarding Defendant's Lack of Pedophilic Tendencies**

8

**{13}** Before the second trial, Defendant indicated his intent to call an expert to testify "to present his opinion to the jury that [Defendant's] sexual history and behavior was inconsistent with the profile tendencies of a pedophile." The State moved to exclude this testimony because it was not useful to the jury either because it was not based on scientific, technical, or specialized knowledge, or because it was irrelevant or confusing to the jury. *See* Rule 11-702 NMRA (stating that an expert "may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"); Rule 11-401(A) NMRA ("Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence[.]"); Rule 11-403 NMRA ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: . . . confusing the issues [or] misleading the jury[.]").

**{14}** Dr. Sosa, the proposed expert, testified that "[Defendant] does not look like many sex predators or sex offenders that [he had] met in the last forty years" and that "the evidence is pretty strong that this man does not look like a typical, average run of the mill sex offender." But Dr. Sosa also testified that "[He couldn't] tell you that [Defendant] is [a sex offender], but [he couldn't] tell you that [Defendant] isn't, because there's no test, no test." He also testified that he didn't "have any evidence

9

to say either way." He stated that his conclusion was based in part on the criminal and sexual history given to him by Defendant and that Defendant's statements as to Defendant's sexual history could not be verified by other sources.

**{15}** Both parties cite to *Lytle v. Jordan*, which we find instructive here. 2001-NMSC-016, ¶¶ 35-36, 130 N.M. 198, 22 P.3d 666. In *Lytle*, the defendant was convicted of two counts of CSPM and four counts of CSCM, and this Court affirmed. *Id.* ¶ 1. By writ of habeas corpus, the Supreme Court reversed the district court's ruling that trial counsel had been ineffective. *Id.* At the evidentiary hearing on effectiveness of counsel, the defendant argued that his counsel was ineffective because they failed to present expert psychological testimony "that [the defendant] did not meet the criteria to support a diagnosis of pedophilia." *Id.* ¶ 22. The district court determined that this testimony "would have been of use for the defense: the defense could have presented the personality assessment." *Id.* ¶ 35 (internal quotation marks omitted). The Supreme Court, however, determined that at trial the district court "might reasonably have concluded that [the] profile would not have made the existence of a fact of consequence more probable or less probable than without the evidence" or that its probative value was "minimal," making it inadmissible under Rules 11-401 or 11-403. *Lytle*, 2001-NMSC-016, ¶ 36. The Court concluded that given "the limited value of this evidence, [the defendant] has failed to demonstrate

10

that his counsel's failure to obtain this type of evidence, even if admissible, rendered the result of the trial unreliable." *Id.*

{16} Here, Dr. Sosa's testimony is similar to that in *Lytle*. We agree with the *Lytle* Court that because the value of the evidence is limited, the district court could reasonably have excluded the testimony under either Rule 11-401 or Rule 11-403. We conclude that there was no abuse of discretion by the district court in excluding this evidence.

**Motion for a Mistrial**

{17} Defendant argues that the district court erred in denying his motion for a mistrial after the State elicited testimony in the second trial that Defendant had been in custody. He maintains that he was prejudiced by this testimony even though the district court gave a curative instruction. We disagree.

{18} On direct examination Defendant's wife stated that she had corresponded with Defendant "[w]hen he was in prison. Not prison, in county. Sorry." The district court called counsel to the bench and reminded the State that it had ordered that there be no mention of Defendant's incarceration. Defendant moved for a mistrial, which the district court denied based on its finding that the State did not intentionally elicit the testimony. The district court also issued a curative instruction, stating that

11

> The [c]ourt is going to instruct you to disregard [the witness's] testimony as it related to [Defendant] being in either the penitentiary or jail, and that is not to be brought into deliberations.
>
> For your benefit, however, there are three letters that are going to be admitted by stipulation as evidence in this case. And these letters were written by [D]efendant shortly after being arrested and incarcerated on these charges.
>
> At the time that [D]efendant was in jail, throughout that period, it was on these charges that he is presumed innocent of until proven guilty beyond a reasonable doubt to your unanimous satisfaction. So you are to draw no inference whatsoever, except that [D]efendant has not been in jail on any other charges.

"[E]ven if inadvertent admission of evidence of prior crimes is error, the prompt sustaining of an objection and an admonition to disregard the witness's answer cures any prejudicial effect of the inadmissible testimony." *Ruiz*, 2003-NMCA-069, ¶ 6. If the State intentionally sought the prohibited testimony, however, "we must determine whether there is a reasonable probability that the improperly admitted evidence could have induced the jury's verdict." *Id.* Defendant does not direct us to evidence that the State intentionally led the witness to mention that Defendant was incarcerated, nor do we find in the questioning any indication that the State intended to contravene the district court's order. We conclude that the district court's curative instruction was sufficient to address the possible prejudicial effect of the testimony. *See State v. Gonzales*, 2000-NMSC-028, ¶ 37, 129 N.M. 556, 11 P.3d 131, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, 275 P.3d 110.

**Evidentiary Hearing on Performance of Interpreters**

{19}     Defendant contends that "[t]he district court erred in not inquiring further when [Defendant] asserted that he could not understand one of his interpreters during his testimony."  Because he did not move for a mistrial on this basis, he asks that we review the district court's determination that the interpreter had performed effectively without an evidentiary hearing for fundamental error. *State v. Gallegos*, 2009-NMSC-017, ¶ 26, 146 N.M. 88, 206 P.3d 993; *see* Rule 12-216 NMRA.  "The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice."  *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633.  We apply fundamental error review "to reverse a conviction only if the defendant's guilt is so questionable that upholding a conviction would shock the conscience, or where, notwithstanding the apparent culpability of the defendant, . . . . when a fundamental unfairness within the system has undermined judicial integrity."  *State v. Silva*, 2008-NMSC-051, ¶ 13, 144 N.M. 815, 192 P.3d 1192 (internal quotation marks and citation omitted), *holding modified on other grounds by State v. Guerra*, 2012-NMSC-027, ¶ 14, 284 P.3d 1076.  Here, Defendant does not argue that upholding his conviction would shock the conscience.  He appears to argue instead that it was error for the district court not to order an evidentiary hearing on his claim that he could not understand the interpreter.  Therefore, we

13

review his claim for whether the district court's conduct "undermined judicial integrity." *Id.* (internal quotation marks and citation omitted).

{20}    We cannot conclude that fundamental error occurred here. At the conclusion of his testimony, in response to the interpreter's question, Defendant stated that he did not understand her Spanish. The interpreter then requested a bench conference. The interpreter reported that when asked what he did not understand, Defendant stated, "It's just the words that you were using." The other interpreter then advised the district court that she had also asked Defendant if he understood her Spanish and that Defendant affirmed that he did. The district court then stated, "I'm satisfied. I understand Spanish, and I'm satisfied, based on his answers and the way you interpreted, he understood fully well both of you." At no point did Defendant himself or his counsel advise the district court that he did not understand. Since this was the extent of the discussion of this issue at trial, there is no evidence before us indicating that Defendant did not understand the proceedings, and Defendant provides no evidence that the translations were inadequate. We conclude that there was no fundamental error in the district court's handling of this issue.

{21}    We turn next to Defendant's arguments that require de novo review: (1) whether the district court erred in denying his motion to dismiss based on violations of Defendant's right to a speedy trial, and (2) whether the district court erred in

14

denying his motion to dismiss the "carbon copy" counts in the indictment. *See State v. Fierro*, 2012-NMCA-054, ¶ 34, 278 P.3d 541 ("On appeal, we defer to the district court's factual findings, but then independently evaluate the four [speedy trial] factors to ensure that the constitutional right has not been violated."(internal quotation marks and citation omitted)), *cert. denied,* 2012-NMCERT-004, 293 P.3d 886; *State v. Dominguez*, 2008-NMCA-029, ¶ 5, 143 N.M. 549, 178 P.3d 834 ("We analyze the dismissal of criminal charges on due process grounds under a de novo standard, deferring to the district court's findings of fact when they are supported by substantial evidence." (internal quotation marks and citation omitted)).

**Speedy Trial**

{22}      Defendant argues that the district court erred in denying his motion to dismiss based on alleged violations of the "six-month rule," Rule 5-604 NMRA.  That rule required the initiation of trial within six months of arraignment or waiver of arraignment of a defendant. *Id.*  The rule was withdrawn by the Supreme Court in *State v. Savedra* for all cases pending as of May 12, 2010. 2010-NMSC-025, ¶ 9, 148 N.M. 301, 236 P.3d 20.  The Supreme Court clarified the definition of "pending" cases by stating that "*Savedra* controls the disposition of . . . [all cases] that were pending before *any court* at the time we issued our Opinion." *State v. Martinez*, 2011-NMSC-010, ¶ 12, 149 N.M. 370, 249 P.3d 82 (emphasis added).  Thus, because this

case was pending before this Court on May 12, 2010, the six-month rule does not apply here. *See State v. Romero*, 2011-NMSC-013, ¶ 7, 150 N.M. 80, 257 P.3d 900.

{23}     Defendant also argues that the delay between arraignment and the second trial violated his constitutional right to a speedy trial. *See* U.S. Const. amend. VI; *see generally State v. Garza*, 2009-NMSC-038, ¶¶ 10-12, 146 N.M. 499, 212 P.3d 387 (discussing the purpose of the right to a speedy trial). Defendant argues that the thirty-month delay between arraignment and the second trial was "presumptively prejudicial" and, therefore, we must assess the length of the delay, the reasons for delay, whether he asserted the right to a speedy trial, and whether the delay caused prejudice to him. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972) (setting out the factors); *State v. Grissom*, 106 N.M. 555, 561, 746 P.2d 661, 667 (Ct. App. 1987) ("On appeal, a reviewing court is required to independently balance the factors considered by the trial court to determine whether a defendant has been deprived of his constitutional right to a speedy trial."); *Garza*, 2009-NMSC-038, ¶¶ 2, 48 (stating that the "guidelines for determining the length of delay necessary to trigger the speedy trial inquiry [are] twelve months for simple cases, fifteen months for cases of intermediate complexity, and eighteen months for complex cases"). The State argues to the contrary that the delay was only eleven months—the period between the mistrial order and the second trial—and consequently the *Barker* inquiry was not triggered.

*See Garza*, 2009-NMSC-038, ¶¶ 2, 49. The State failed to cite to authority in support of this calculation of the length of the delay. Because it concluded that a speedy trial inquiry was unnecessary, the State did not respond to Defendant's arguments regarding the *Barker* factors.

{24} Even if we assume without deciding that the length of the delay was thirty months and apply the *Barker* factors, we conclude that there was no speedy trial violation. First, because the length of the delay is "both a threshold inquiry that triggers the rest of the analysis and . . . part of the balancing test itself[,]" we must determine whether the length of the delay weighs against Defendant or the State. *Fierro*, 2012-NMCA-054, ¶ 35 (internal quotation marks and citation omitted). Here, the district court determined that this case was of "at a minimum" intermediate complexity. Neither party challenges this determination on appeal. A delay of fifteen months is presumptively prejudicial in cases of this complexity. *Garza*, 2009-NMSC-038, ¶¶ 2, 48. Here, the delay was nearly double the presumptive level. Thus, this factor weighs in Defendant's favor. *See Fierro*, 2012-NMCA-054, ¶ 36.

{25} Defendant argues that "[m]ost of the delays in this case were due to delays in discovery[,] . . . setting of pretrial motions[,] . . . [and] appointment of new counsel after [Defendant's counsel] became aware of a conflict of interest." Other delays were caused by "the district court's management of its docket." Although Defendant states

17

that "[t]his factor weighs in [his] favor[,]" he fails to point to any action by the State that caused these delays. On appeal the State makes no argument on this issue, but we note that the State responded to Defendant's motion to dismiss with explanations for the delay and argued that Defendant caused sixteen and one-half months of delay, a charge Defendant does not rebut. In addition, in the context of this case, we must consider the impact of the mistrial on the delay. Although we have assumed for the purposes of the other factors that the length of delay was thirty months, we cannot ignore the fact that the first trial ended in a hung jury, a cause for delay that weighs against neither party. In aggregate, we conclude that the reasons for delay are at least neutral, if not weighed against Defendant.

{26}     Defendant's first and only assertion of his right to a speedy trial occurred in September 2007, after the first trial had been completed and five months before the second trial. Although Defendant's assertion of the right may have been vigorous, couched as it was in a motion to dismiss all charges based on a speedy trial violation, because it was filed only *after* the first trial we conclude that this factor is neutral with respect to the period between arraignment and the first trial, and weighs only slightly in Defendant's favor with respect to the period between the mistrial and the second trial. Although Defendant objected to one of the State's petitions for an extension of time under Rule 5-604, it appears that Defendant also stipulated to at least one

18

continuance and requested several others. Overall, this factor is neutral or weighs against Defendant.

**{27}** Finally, Defendant argues that he was prejudiced by the delay. There are "three interests under which we analyze prejudice to the defendant: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *State v. Maddox*, 2008-NMSC-062, ¶ 32, 145 N.M. 242, 195 P.3d 1254 (internal quotation marks and citation omitted), *abrogated on other grounds by State v. Parrish*, 2011-NMCA-033, 149 N.M. 506, 252 P.3d 730. "Although the State bears the ultimate burden of persuasion, Defendant does bear the burden of production on this issue, and his failure to do so greatly reduces the State's burden." *State v. Urban*, 2004-NMSC-007, ¶ 18, 135 N.M. 279, 87 P.3d 1061. Here, Defendant appears to argue that he suffered undue anxiety and concern and "restrictions on [his] liberty" for an unreasonably long time. He provides no support for his argument that he suffered anxiety and concern greater than that "inherent for every defendant who is jailed while awaiting trial." *Garza*, 2009-NMSC-038, ¶ 35 (alteration, internal quotation marks, and citation omitted). Although the State provides no argument on this issue, we nevertheless conclude that the State did not fail to meet its burden on this point. **{28}** Finally, Defendant states that he was prejudiced because he was incarcerated for thirty months. He directs us

19

to *State v. Kilpatrick*, in which this Court held that a defendant was prejudiced when he was released but subject to restrictions for fifteen months. 104 N.M. 441, 446, 722 P.2d 692, 697 (Ct. App. 1986). He appears to argue that because his restrictions were greater and for a longer duration than in *Kilpatrick*, we should weigh this factor in his favor. This argument ignores the fact that what *Barker* requires is a case by case assessment of the factors, which are part of a "four-pronged balancing test in which the conduct of both the prosecution and the defendant are weighed." *Kilpatrick*, 104 N.M. at 444, 722 P.2d at 695 (internal quotation marks and citation omitted). Thus, the conclusion by the *Kilpatrick* Court that the delay there was unreasonable does not require a similar conclusion here. Defendant makes no other argument to support his claim that the delay in prosecution prejudiced him or his defense. In the absence of a showing of "particularized prejudice," we cannot agree that Defendant's right to a speedy trial was violated. *Garza*, 2009-NMSC-038, ¶¶ 39-40 (determining there was no violation when the other *Barker* factors did not "weigh heavily" in the defendant's favor and the defendant failed to show prejudice "of the kind against which the speedy trial right is intended to protect").

**{29}**     Defendant argues that "this Court must order the dismissal of the nine carbon-copy counts from October, April, and May to protect [Defendant's] fundamental rights to due process and protection against double jeopardy." He contends that both the

20

indictment and the evidence at trial were insufficiently particular as to those counts because they did not tie the counts to specific, discrete acts, "making it confusing and difficult for the jury to distinguish between any of the counts."

{30} The right to due process of law stems from the Fourteenth Amendment to the United States Constitution and "requires the State to provide reasonable notice of charges against a person and a fair opportunity to defend." *State v. Dominguez*, 2008-NMCA-029, ¶ 5, 143 N.M. 549, 178 P.3d 834 (internal quotation marks and citation omitted); *see* U.S. Const. amend XIV. In addition, due process "requires that criminal charges provide criminal defendants with the ability to protect themselves from double jeopardy." *Dominguez*, 2008-NMCA-029, ¶ 5 (internal quotation marks and citation omitted). Following these principles, an indictment is defective when it "provide[s] the defendant with little ability to defend himself [because] the counts [are] not anchored to particular offenses." *State v. Tafoya*, 2010-NMCA-010, ¶ 21, 147 N.M. 602, 227 P.3d 92 (internal quotation marks and citation omitted). The analysis of whether an indictment is sufficiently particular under *Tafoya* is different from that under cases addressing the length of the charging period. *See, e.g., State v. Baldonado*, 1998-NMCA-040, ¶ 26, 124 N.M. 745, 955 P.2d 214. "[E]ven if a charging period is constitutionally appropriate under *Baldonado*, the charges may still

violate a defendant's right to due process and double jeopardy when they are factually indistinguishable." *Tafoya*, 2010-NMCA-010, ¶ 21.

{31} In *Tafoya*, the defendant was charged with two counts of vaginal CSPM and two counts of anal CSPM, as well as two counts of CSCM. *Id.* ¶ 2. The Court determined that the vaginal CSPM and anal CSPM counts "[were] distinguishable from one another because they [were] factually distinct acts." *Id.* ¶ 22. Similarly, the two counts of CSCM were distinguishable from each other because the State alleged different types of touching. *Id.* Therefore, the question before the Court was whether each count of vaginal CSPM and each count of anal CSPM was distinguishable from the other. *Id.* The Court determined that they were not, because the evidence at trial did not support the allegation that each act of vaginal or anal CSPM was tied to a distinguishable incident. *Id.* ¶ 24. Rather, the victim "only described a pattern of vaginal CSPM and a pattern of anal CSPM and then said that each happened lots of times, without relating any act to a specific incident." *Id.* The Court reversed the defendant's convictions for one count of vaginal CSPM and one count of anal CSPM. *Id.*

{32} Here, Defendant maintains that "[t]he October, April, and May acts were not differentiated by any facts that [Child] could recall." Child testified that Defendant

22

touched her breasts and penetrated her both vaginally and anally at least one time in September, around the time that school started. Testimony continued:

> Q. And that was the—September. And then in October did the same thing happen at least one time?
> A. Yes.
> Q. Did it happen probably more than one time?
> A. Yes.

Conviction for a single count of vaginal CSPM, a single count of anal CSPM, and a single count of CSCM is not inconsistent with this testimony or our case law. Child's testimony is similar to that in *Tafoya* describing a pattern of abuse during the charging period (October) for which the State could charge a single count for each distinguishable type of act. *Id.* ¶ 24 (finding no due process violation in upholding a single count for each type of act where "the evidence presented at trial establish[ed] a pattern of CSPM conduct during the charging period for which [the d]efendant had notice and an opportunity to defend").

{33} The State argues that the April and May charges did not violate Defendant's rights because Child testified that "[d]uring both April and May 2005, when her mother was working and Defendant would take her to school, he again did all those things to her." Child's testimony as to April and May was as follows.

> Q. And in April and then May, the end of school, did he touch you at least one time in each of those three places?
> A. Can you repeat the question?

23

> Q. In April, right before you got out of school, did he at least touch you one time in each of those three places, when you were still in fourth grade and [your mother] was working at Shorty's?
>
> A. I don't remember.
>
> Q. Well, when you were in school, in fourth grade, and your mom was working at Shorty's, who would mostly take you to school?
>
> A. My mom would—usually it was my mom and [Defendant].
>
> Q. But if your mom had to leave for work,—and we'll get her hours when she comes—who would take you?
>
> A. [Defendant] would be taking me in the morning.
>
> Q. And so in fourth grade, was the touching still going on when [Defendant] would have to take you to school?
>
> A. Yes.
>
> Q. And if school goes through May, was the touching still going on when he would have to take you to school?
>
> A. Yes.

We agree with Defendant that this testimony only connects the touching to the entire two month period, not to each of the two months. Consequently convictions for three of the six counts for April and May must be reversed.

**Sufficiency of the Evidence**

{34} In a related argument, Defendant maintains that "[t]he jury returned guilty verdicts on more counts of CSCM than [Child] testified occurred." We review this challenge to determine whether the evidence was sufficient to support the jury's verdict. *See Tollardo*, 2012-NMSC-008, ¶ 39. A sufficiency of the evidence review involves a two-step process. Initially, the evidence is viewed in the light most favorable to the verdict. Then the appellate court must make a legal determination of "whether the evidence viewed in this manner could justify a finding by any rational

24

trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *State v. Apodaca*, 118 N.M. 762, 766, 887 P.2d 756, 760 (1994) (internal quotation marks and citation omitted).

**{35}** Defendant challenges the jury's verdicts related to "twelve counts for September, October, April, and May" because Child did not identify a "specific memor[y]" to which those counts could be tied. Defendant first argues that Child's testimony regarding inappropriate touching in September was inconsistent because although Child testified that it occurred when she started fourth grade, which started in August, also responded affirmatively to the State's questions stating that the acts occurred in September. We disagree that this inconsistency warrants reversal. *State v. Ortiz-Burciaga*, 1999-NMCA-146, ¶ 22, 128 N.M. 382, 993 P.2d 96 ("It is the exclusive province of the jury to resolve factual inconsistencies in testimony." (internal quotation marks and citation omitted)).

**{36}** Next, Defendant argues that because Child did not identify an event in October by which she remembered instances of abuse, the evidence of abuse in October was insufficient. In addition to the testimony included above, Child testified that Defendant touched her inappropriately "every day" and that the last time Defendant touched her was "in July or in June." Viewing the evidence in the light most favorable to the verdict, we conclude that the evidence sufficiently supports the jury's

25

verdict on the October counts. Viewed the same way, the evidence for the April and May counts was sufficient to support the jury's verdict on either the April or May counts, but not both.

**Ineffective Assistance of Counsel**

{37}    Defendant's final argument is that he received ineffective assistance of counsel and, therefore, his case should be remanded for a new trial. There is a two-fold test for proving ineffective assistance of counsel; the defendant must show (1) that counsel's performance fell below that of a reasonably competent attorney, and (2) that defendant was prejudiced by the deficient performance. *State v. Hester*, 1999-NMSC-020, ¶ 9, 127 N.M. 218, 979 P.2d 729. The burden of proof is on the defendant to prove both prongs. *Id.* "When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record. If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition, although an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance." *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61.

{38}    Defendant "asserts that various instances of ineffective assistance of counsel occurred that may not be reflected in the record" and that trial counsel failed to call

certain witnesses, subpoena medical records, move to recuse the judge, and give Defendant certain documents. We decline to consider these allegations of ineffectiveness because there is no relevant evidence in the record, nor do we find prima facie ineffectiveness of counsel requiring remand. *State v. Ford*, 2007-NMCA-052, ¶ 30, 141 N.M. 512, 157 P.3d 77 ("We will not review an allegation of ineffective assistance of counsel that depends on matters outside of the record."). Defendant may seek review of this issue through a habeas corpus petition to our Supreme Court.

## III. CONCLUSION

{39} We conclude that Defendant did not demonstrate abuse of discretion in the district court's evidentiary rulings at trial, nor did the district court err in not holding an evidentiary hearing on the efficacy of the interpreters. Defendant's speedy trial rights were not violated. Finally, we determine that Defendant has not shown a prima facie case of ineffective assistance of counsel and we decline to address this claim because relevant evidence is not in the record. We remand to the district court for reversal of one count of CSPM for vaginal penetration, one count of CSPM for anal penetration, and one count of CSCM in either April or May because the evidence at trial did not support two factually distinguishable counts of each type. Defendant's convictions are otherwise affirmed.

27

{40}    IT IS SO ORDERED.

_____
MICHAEL D. BUSTAMANTE, Judge

WE CONCUR:

_____
JONATHAN B. SUTIN, Judge

_____
MICHAEL E. VIGIL, Judge