2003-NMCA-069

68 P.3d 957

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Miguel RUIZ, Defendant–Appellant.**

No. 22,282.

Court of Appeals of New Mexico.

Feb. 18, 2003.

Certiorari Denied, No. 28,007, May 5, 2003.

Patricia A. Madrid, Attorney General, Ann M. Harvey, Assistant Attorney General, Santa Fe, NM, for Appellee.

John B. Bigelow, Chief Public Defender, Laurel A. Knowles, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

PICKARD, Judge.

{1} Defendant was convicted, after a jury trial, of involuntary manslaughter. Defendant appeals the trial court's denial of a motion for mistrial after impermissible evidence was introduced at trial. We reverse the trial court's ruling and remand for a new trial.

### FACTS AND PROCEDURAL ISSUES

{2} During the day of January 12, 2000, the victim in this case and Defendant fought with each other several times. Later that same night, Defendant ended up at the victim's house to drink beer and "kick[ ] back" with his friend JoJo, who was also the victim's cousin. When the victim arrived home and discovered Defendant was there, another fight ensued in the house. Witnesses testified that the victim was winning that fight, but that the victim's father broke it up and ordered the men to take the fight outside. The victim went into the back yard and Defendant tried to leave by the front door, but found it was locked with a deadbolt. He then left through the back door and encountered the victim outside; another fight broke out between them. After a short period of time fighting, the victim jumped up, stumbled into the kitchen, and died there of a knife wound to his heart. Defendant ran down the street, fought with his friend JoJo, and fell onto a neighbor's yard, saying that he was bleeding. He was held by the neighbor until the police arrived. Defendant was indicted for first degree murder and aggravated assault.

{3} On the morning of his trial, Defendant submitted a motion in limine asking that there be no mention of his prior felony and no mention of his recent release from prison. The State agreed to those conditions and the judge ruled accordingly. Defendant also requested in that motion that there be no mention of gangs during the trial. The court ruled that the attorneys could not mention gangs in their opening statements and that it would monitor the testimony and address any testimony that was inappropriate. At that motion hearing, the defense attorney expressed concern that all of the State's witnesses probably had a bias against his client and that they may try to say inappropriate things to hurt his client.

{4} The testimony at issue in this appeal came out during the State's questioning of the victim's father, who was in the house when the victim and Defendant were fighting. The State asked:

Q: Excuse me, how do you know they were fighting?

A: Because I can hear them.

Q: And what did you do?

A: I got up, and [Defendant] was crying something to JoJo, "Remember in the past." I guess where they've been together, you know, the past friendship, or he was crying for help, for him to go in there and help him out.

Q: What was he saying?

A: You want me to say what he said? "Flaco, the pinta, remember the pinta."

Q: What did you do?

A: I got up, and then JoJo said, "You guys stop. Go outside."

The defense attorney immediately objected to the statement and moved for a mistrial, because "pinta" is a slang term for penitentiary, and the statement meant that Defendant and JoJo were in the penitentiary together. The court acknowledged the ruling regarding the motion in limine, but denied the motion for mistrial and instead decided to give a curative instruction. The court then asked the jury to disregard the last question and answer. At the end of the day, the defense attorney again moved for a mistrial because the State elicited testimony that was in violation of the motion in limine, he thought there were several people on the jury who knew exactly what that phrase meant, and he did not believe the curative instruction could cure the prejudice. The court again acknowledged that there was a violation of the motion in limine and that there were some jurors who probably did know what the phrase meant, but did not grant a mistrial. The court said it would

reconsider its ruling at the end of trial if there were more errors. Though the court did not revisit the issue at trial, Defendant later moved for a new trial, which was again denied by the court. In a letter ruling on the later motion, the court stated it felt that "there was some prejudice by the question and answer of the witness," but that there was substantial evidence to support the verdict that was rendered. This appeal followed.

## DISCUSSION

{5} Defendant raises only one issue on appeal: that he was prejudiced by the State's eliciting of the testimony referring to the "pinta," and that the court erred in giving a curative instruction rather than declaring a mistrial.

{6} We review the trial court's denial of the motion for mistrial under an abuse of discretion standard. *State v. Gonzales,* 2000–NMSC–028, ¶ 35, 129 N.M. 556, 11 P.3d 131. In New Mexico, it is well settled that, even if inadvertent admission of evidence of prior crimes is error, the prompt sustaining of an objection and an admonition to disregard the witness's answer cures any prejudicial effect of the inadmissible testimony. *Id.* ¶¶ 36–37. However, the analysis is different if the inadmissible testimony is intentionally elicited by the prosecution. *Id.* ¶ 39. In that case, we must determine whether there is a reasonable probability that the improperly admitted evidence could have induced the jury's verdict. *Id.*

{7} We must first determine whether the State's conduct was intentional. The State argues that the prosecutor had been trying to stay away from the prison issue and that he had expected the witness to say something else. During the bench conference after the first objection and motion for a mistrial, the court acknowledged the motion in limine, and told the prosecutor, "[y]ou just walked him right into it. You just took him right to that." In the bench conference after the second motion for a mistrial, the court again acknowledged that "this is obviously a matter that I ruled on prior to trial, and specifically it's in the motion in limine." The prosecutor argued that it was not the answer

he was anticipating, but did not tell the court what answer he actually was expecting. The court admitted that there were probably some jurors who understood what the testimony meant, but they would not be able to discuss it with the ones who did not understand because the court told them to disregard it. The prosecutor submitted an affidavit following the motion for mistrial, denying that he was attempting to elicit improper testimony and affirming that he was attempting to elicit testimony in support of the State's theory that Defendant was provoked into killing the victim. However, neither the affidavit nor the brief describes exactly what testimony the prosecutor was expecting.

{8} In examining the testimony itself, it appears that the witness was trying to avoid improper reference to the penitentiary by saying "where they've been together, you know, the past friendship." Rather than accept that testimony, the prosecutor asked what Defendant was saying. The witness again exhibited an awareness that what he was trying to say was forbidden, by asking the prosecutor, "[y]ou want me to say what he said?" Again, the prosecutor did not stop him, but instead let the witness say, "the pinta, remember the pinta."

{9} The motion in limine clearly prohibited the prosecutor from eliciting any reference to Defendant's prior felony and time in the penitentiary. The witness knew he was not allowed to testify about the penitentiary. The prosecutor directly asked the witness to say what he should have known, and what the witness seemed to know, was forbidden. Finally, the prosecutor had several opportunities to tell the court what testimony he was expecting to elicit besides what was actually said, but was unwilling or unable to do so. We determine that the prosecutor's action here was intentional. We also note that our determination here is not contrary to our recent decision in *State v. Caudillo,* 2003–NMCA–042, ¶ 14, 133 N.M. 468, 64 P.3d 495, upon which the State relies, because the offending testimony in *Caudillo* was unsolicited.

{10} We must next determine whether there is a reasonable probability that the

improperly admitted evidence could have induced the jury's verdict. *Gonzales*, 2000–NMSC–028, ¶ 39, 129 N.M. 556, 11 P.3d 131. It is undisputed that Defendant and the victim fought several times on January 12, 2000, and that the victim was stabbed to death during the last fight. The jury heard testimony that Defendant "won" the first fight of the day. There was uncontested testimony that the victim instigated the second fight, which he was "winning" until the victim's father stopped it. Defendant knew the victim was in the back yard after this second fight, so tried to leave by the front door but was prevented from doing so by a dead bolt. There was conflicting testimony about whether the victim had armed himself with a broken bottle or with a pipe. It was undisputed that there was a kitchen knife left on the kitchen table, but only one out of seven witnesses who were in the yard that night, all of whom were either family or friends of the victim, testified that he saw Defendant with a knife. Several witnesses testified that the victim started the last fight, and all agreed that the victim was in the yard close to the door when the Defendant walked out. No one actually saw the stabbing. Several witnesses testified that the victim had pinned Defendant to the wall or that Defendant was underneath the victim during that fight. The medical examiner testified that the knife wound was one of the worst he had ever seen, but that the atypical wound could have been caused by the stabber pulling the knife out, or by the victim struggling in a certain way, or could have been caused by two people struggling for the knife.

{11} The defense theory at trial was self-defense. The jury was instructed on second degree murder, voluntary manslaughter, involuntary manslaughter, and self-defense. Given the conflicting and sometimes confusing evidence of the eyewitnesses to the fight, we cannot say that there was "overwhelming evidence of [D]efendant's guilt." *State v. Saavedra*, 103 N.M. 282, 285, 705 P.2d 1133, 1136 (1985) (finding that improperly admitted evidence of the defendant's prior conviction could not be cured by an instruction because evidence of the defendant's guilt was not overwhelmingly persuasive). This case was essentially about two men who were antagonistic towards each other and who had instigated fights against each other earlier in the day. Defendant was clearly losing the fight that occurred just prior to the fatal fight. However, no witness could say how the knife got into the back yard, who had the knife first, or even who instigated the last fight. Because the evidence in this case does not clearly point to either the victim or Defendant as the final instigator or to whether Defendant was or was not in fear for his life, we cannot say that the erroneous admission of Defendant's being in the penitentiary did not contribute to his conviction. Evidence that Defendant had committed a crime may well have influenced a jury in this close case. If there is a reasonable possibility that the evidence might have contributed to the conviction, we must reverse. *See State v. Haynes*, 2000–NMCA–060, ¶¶ 22, 26, 129 N.M. 304, 6 P.3d 1026 (holding that it was reversible error to admit evidence indicating that the defendant had some type of criminal past because the case boiled down to a swearing match between the defendant and a witness, with little other evidence linking the defendant to the crime). We hold that, (1) having found that the prosecutor acted intentionally by walking the witness right into the answer and (2) having found that some jurors would know what the "pinta" was and there was therefore prejudice to Defendant from the remark, the trial court abused its discretion by not declaring a mistrial because the prosecutor intentionally elicited evidence that had a reasonable possibility of contributing to Defendant's conviction.

## CONCLUSION

{12} We reverse Defendant's conviction and remand to the trial court for a new trial.

{13} **IT IS SO ORDERED.**

WE CONCUR: IRA ROBINSON, Judge, and RODERICK T. KENNEDY, Judge.