This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO**,

Plaintiff-Appellee,

v.                                                    **No.    30,893**

**WARREN SCHUESSLER,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Kenneth H. Martinez, District Judge**

Gary K. King, Attorney General
Margaret E. McLean, Assistant Attorney General
Joel Jacobsen, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Acting Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**BUSTAMANTE, Judge.**

{1}    Convicted of two counts of criminal sexual penetration of a minor (CSPM) and two counts of criminal sexual contact with a minor (CSCM), Warren Schuessler (Defendant) appeals. Defendant alleges that the district court erred in admitting improper character evidence, that there was insufficient evidence of criminal sexual contact, and that the jury convicted him of multiple indistinguishable counts. We affirm.

**BACKGROUND**

{2}    Defendant was indicted on eleven counts of molesting his niece (Child) and her older sister. Defendant is seven years older than Child. Child also has a younger sister. Prior to trial, the counts involving Child and her sister were severed. Thus, the charges relevant to the present case are only those in which Defendant is accused of sexual contact with Child when Child was between the ages of eleven and twelve. As part of the order severing the counts involving Child's sister, the district court ordered exclusion of all evidence related to those charges. Additional facts are provided as necessary to our discussion of Defendant's arguments on appeal.

**DISCUSSION**

**{3}** Defendant makes six arguments. In his first point Defendant argues that, even though evidence pertaining to the counts related to Child's sister was supposed to be excluded, "the State introduced evidence throughout the trial suggesting that [Defendant] molested [Child's] sisters . . . as well." Defendant concedes that evidence that he groomed Child for a sexual relationship with him by giving her alcohol and drugs was permissible. But, he submits, evidence that he similarly groomed Child's sisters was inadmissible because it was tantamount to evidence that he had molested the sisters. He asserts that evidence of grooming the sisters was "other bad acts evidence" that should have been excluded under New Mexico's rules of evidence. Rule 11-404(B) NMRA.

**{4}** The State argues in response that the older sister's testimony merely corroborated Child's testimony and therefore was not evidence of other "bad acts." It maintains that "[h]aving conceded that [use of the evidence of grooming of Child was permissible], Defendant should not be permitted to turn around and deny that the corroborating testimony of an eyewitness to the exact same events was reversible error."

**{5}** We review the district court's rulings as to admission of testimony for abuse of discretion. *State v. Armendariz*, 2006-NMSC-036, ¶ 6, 140 N.M. 182, 141 P.3d 526,

*overruled on other grounds by State v. Swick*, 2012-NMSC-018, 279 P.3d 747. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citations omitted).

**{6}** Rule 11-404(B)(1) prohibits admission of "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Such evidence is not always prohibited, however. "[E]vidence of prior acts with the complaining witness can directly bolster the complaining witness's testimony by providing significant corroboration. When used for such a purpose, this evidence is admissible and not considered propensity evidence." *State v. Dietrich*, 2009-NMCA-031, ¶ 42, 145 N.M. 733, 204 P.3d 748 (internal quotation marks and citation omitted). In addition, even if not admissible for showing propensity to act in a certain way, "evidence [of other acts] may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Rule 11-404(B)(2).

**{7}** Here, Child testified that Defendant gave her alcohol "[a]ll the time. As many times as he had it[,]" and that he would give alcohol to both her and her older sister. She also testified that Defendant gave her and her older sister marijuana. The older sister testified that Defendant gave her and Child alcohol and marijuana. Child's younger sister testified that Defendant drank with "[her] and [her] sisters," that she had observed Child and her older sister smoking marijuana with Defendant, and that she had smoked marijuana with Defendant. The sisters' testimony thus addressed both that Defendant gave alcohol and marijuana to Child and that Defendant also gave them to the sisters. Assuming without deciding that admission of this testimony was contrary to Rule 11-404(B), we conclude that its admission was harmless. *See State v. Gallegos*, 2005-NMCA-142, ¶ 32, 138 N.M. 673, 125 P.3d 652, *aff'd in part, rev'd in part on other grounds,* 2007-NMSC-007, 141 N.M. 185, 152 P.3d 828 (stating that we apply a harmless error analysis to improperly admitted evidence).

**{8}** "Improperly admitted evidence is not grounds for a new trial unless the error is determined to be harmful." *State v. Tollardo*, 2012-NMSC-008, ¶ 25, 275 P.3d 110. Here, Defendant alleges a violation of the rules of evidence; the error alleged is therefore non-constitutional, *see State v. Barr*, 2009-NMSC-024, ¶ 53, 146 N.M. 301, 210 P.3d 198, *overruled on other grounds by Tollardo*, 2012-NMSC-008, ¶ 35, which

we review to determine whether "there [is] a reasonable probability that [the evidence] contributed to the [defendant's] conviction."

> To judge the "probable" effect of an evidentiary error, courts must evaluate all circumstances surrounding the error. We examine the error itself, including the source of the error and the emphasis placed on the error at trial. To put the error in context, we often look at the other, non-objectionable evidence of guilt, not for a sufficiency-of-the-evidence analysis, but to evaluate what role the error played at trial. [In addition,] . . . courts may, depending upon the circumstances of the cases before them, examine the importance of the erroneously admitted evidence in the prosecution's case, as well as whether the error was cumulative or instead introduced new facts. This is a case-by-case examination.

*State v. Leyba*, 2012-NMSC-037, ¶ 24, 289 P.3d 1215 (internal quotation marks and citation omitted).

{9}     Under this standard of review, we conclude that the admission of this testimony was harmless. In the context of this twelve-day jury trial, we cannot say that there is a reasonable probability that the sisters' somewhat oblique references to provision of alcohol and marijuana to them by Defendant "contributed to [D]efendant's conviction." *Id.* (internal quotation marks and citation omitted). The testimony did not play a major role in the prosecution's case. First, the testimony complained of constituted only a few minutes out of the entire trial and the State did not highlight the sisters' testimony that Defendant had given them alcohol and marijuana in opening

6

or closing arguments. *Cf. id.* ¶¶ 27-29 (holding that improperly admitted evidence was harmful because "[t]actically, the [s]tate used the diary as a centerpiece of its case[,]" including addressing the evidence in direct and cross-examination as well as opening and closing arguments.).

{10}    In addition, we note that the jury received instruction that there were no charges against Defendant for conduct with the younger sister. After defense counsel objected to a question of the younger sister, the district court instructed the jury that there had been no allegations by the younger sister against Defendant of improper sexual conduct. Even though the district court gave this instruction in the context of testimony about the younger sister's safe house interview, the instruction limits, if not eliminates, the probability that the verdict would have been different without the younger sister's testimony that Defendant offered her marijuana.

{11}    Further, the impact of the sisters' testimony is minimal in light of the other evidence adduced at trial. *See id.* ¶ 24 ("To put the error in context, we often look at the other, non-objectionable evidence of guilt, not for a sufficiency-of-the-evidence analysis, but to evaluate what role the error played at trial."). Here, Child testified at length about Defendant's conduct and about her living arrangements before, during, and after the charging period, including her mother's debilitating alcohol use, the lack of supervision by the mother, and Defendant's visits to Child's home and Child's

visits to Defendant's home. Other witnesses testified as to the same topics. Defendant testified, denying that he sexually abused Child. Two experts testified, one for the State and one for the defense, about the physical evidence of sexual abuse and the significance of the lack of evidence of injury in Child's examination. Under the circumstances of this case, we conclude that there is no reasonable probability that the testimony at issue contributed to Defendant's convictions and that its admission was, therefore, harmless.

{12}   Defendant's second argument is that the district court erred in denying his motion for a new trial after a detective testified that, after receiving a referral from the Children, Youth and Families Department, she began investigating by "contact[ing] the persons that were involved, the females that were involved, or their parents." Defendant characterizes this testimony as "unmistakable that the [d]etective was referring to multiple female victims of sexual abuse" and that this testimony, in combination with that of the sisters, "would have improperly induced the jury to convict [him and therefore] the [district] court abused its discretion in failing to grant a mistrial." The State argues that (1) the statement was unobjectionable because "[s]tating that more than one female was involved in the investigation is simply not the same as saying that more than one female made allegations against Defendant[;]" (2) the district court's finding that the statement was not intentionally elicited by the

8

prosecution obviates the need for any analysis of whether the improperly admitted evidence "could have induced the jury's verdict[;]" and (3) the possible prejudicial effect of the testimony was cured when the district court offered to give a curative instruction.

{13}     We review the denial of a motion for a new trial for an abuse of discretion. *Gallegos v. State Bd. of Educ.*, 1997-NMCA-040, ¶ 30, 123 N.M. 362, 940 P.2d 468. If evidence of prior bad acts is improperly admitted inadvertently, "the prompt sustaining of an objection and an admonition to disregard the witness's answer cures any prejudicial effect of the inadmissible testimony." *State v. Ruiz*, 2003-NMCA-069, ¶ 6, 133 N.M. 717, 68 P.3d 957.  Even when the defendant refuses a curative instruction, the district court's offer of an instruction "is sufficient to cure any prejudicial effect." *State v. Fry*, 2006-NMSC-001, ¶ 53, 138 N.M. 700, 126 P.3d 516. If the State intentionally sought the prohibited testimony, however, "we must determine whether there is a reasonable probability that the improperly admitted evidence could have induced the jury's verdict." *Ruiz*, 2003-NMCA-069, ¶ 6.

{14}     Here, the district court determined that the statement was inadvertently elicited. Similarly, we discern nothing in the State's questioning of the detective that indicates an intent to elicit reference to allegations against Defendant by people other than Child and Defendant does not argue to the contrary.  *Cf. id.* ¶¶ 8-9 (determining that the

prosecutor intentionally elicited prohibited testimony where it was clear "that the witness was trying to avoid improper reference to the penitentiary" and "[r]ather than accept[ing] that testimony," the prosecutor pushed the witness to refer to the penitentiary.). The district court offered a curative instruction, which was refused by Defendant. We conclude that the district court's offer, even if refused by Defendant, was sufficient to address the possible prejudicial effect of the testimony. *See Fry*, 2006-NMSC-001, ¶ 53.

{15} Defendant's remaining four arguments pertain to whether there was sufficient evidence of distinct acts of CSCM or CSPM and whether his right to be free from double jeopardy was violated. Before addressing these arguments, we make several observations about the charges and the testimony. The indictment alleges four counts of CSPM and two counts of CSCM that occurred between October 7, 2001 and July 17, 2003. These dates correspond to Defendant's eighteenth birthday and the day before Child's thirteenth birthday, respectively. Thus, the State sought to specify a charging period in which the alleged conduct would constitute CSPM in the fourth degree and in which Defendant could be sentenced as an adult. *See* NMSA 1978, § 30-9-11(D)(1) (2009); NMSA 1978, §§ 31-18-15.1(G) (2009), -15.2 (1996). Two counts alleged digital penetration of Child (CSPM) and two counts alleged sexual intercourse with Child (CSPM). Two counts alleged that Defendant caused Child to

10

touch his penis (CSCM). The jury instructions for each two-count set of charges were identical. The jury instructions for CSPM based on digital penetration permitted the jury to convict for the step-down offense of CSCM. During trial, the State argued that each type of contact occurred at least once when Child was eleven years old and at least once when Child was twelve years old. The jury instructions did not, however, require jurors to differentiate between acts occurring when Child was eleven and acts occurring when Child was twelve, since the charging period in all of the instructions were the same. Child testified that Defendant first began touching her sexually when she was seven years old and that he continued to have sex with her until she was thirteen years old.

**{16}** With this context in mind, we turn to Defendant's specific arguments. Defendant's third argument is that "[t]here was no testimony of distinct acts of CSC[M] that occurred within the time charged. Accordingly, [Defendant's] convictions for CSCM must be vacated." To determine whether the evidence was sufficient to support the CSCM convictions, we first view the evidence in the light most favorable to the verdict. *State v. Apodaca*, 118 N.M. 762, 766, 887 P.2d 756, 760 (1994). Then, we assess "whether the evidence viewed in this manner could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *Id.* (internal quotation marks and

11

citation omitted).  "[A] reviewing court will not second-guess the jury's decision concerning the credibility of witnesses, reweigh the evidence, or substitute its judgment for that of the jury." *State v. Lucero*, 118 N.M. 696, 699, 884 P.2d 1175, 1178 (Ct. App. 1994).

{17}    In essence, Defendant's argument is that Child did not testify to acts of sexual contact separate from that inherent in acts of sexual penetration that occurred during the charging period.  The State argues that Child's specific testimony that Defendant touched her vagina with his hand and then had sex with her and that Defendant had sex with her multiple times when she was eleven and twelve years old supports the CSCM convictions.  We agree with the State that this evidence is sufficient to permit the jury's verdict as to the CSCM counts because this Court has previously held that CSC and CSP convictions arising from unitary conduct are appropriate.  *See State v. Pisio*, 119 N.M. 252, 261, 889 P.2d 860, 869 (Ct. App. 1994) (stating that convictions for CSP and CSC were "proper units of prosecution" even when they arose from unitary conduct).

{18}    In his fourth argument, Defendant maintains that the "[m]ultiple undifferentiated sexual abuse charges that are factually indistinguishable violate[d] [his] due process rights and protections against double jeopardy."  Citing *State v. Tafoya*, 2010-NMCA-010, 147 N.M. 602, 227 P.3d 92 and *State v. Dominguez*, 2008-

NMCA-029, 143 N.M. 549, 178 P.3d 834, Defendant argues that "[b]ecause the State was unable to offer evidence that distinguished the generic, identical counts described in the [identical] jury instructions, the resulting duplicative convictions must be reduced to a single count [of each type]." He requests that we vacate one conviction for CSCM and one conviction for CSPM.

{19}   The right to due process of law stems from the Fourteenth Amendment to the United States Constitution and "requires the State to provide reasonable notice of charges against a person and a fair opportunity to defend." *Dominguez*, 2008-NMCA-029, ¶ 5 (internal quotation marks and citation omitted); *see* U.S. Const. amend XIV. The right to due process also "requires that criminal charges provide criminal defendants with the ability to protect themselves from double jeopardy." *Dominguez*, 2008-NMCA-029, ¶ 5 (internal quotation marks and citation omitted). Following these principles, "[an] indictment [is] defective [when] it provide[s] the defendant with little ability to defend himself [because] the counts [are] not anchored to particular offenses." *Tafoya*, 2010-NMCA-010, ¶ 21 (internal quotation marks and citation omitted). An insufficiently particular indictment offends the prohibition against double jeopardy in two ways: first, it does not

> permit the defendant to plead a conviction or an acquittal as a bar to future prosecutions, and second, . . . "undifferentiated counts introduce[] the very real possibility that [the defendant] would be subject to double

13

jeopardy in his initial trial by being punished multiple times for what may have been the same offense."

*Dominguez*, 2008-NMCA-029, ¶ 9 (second alteration in original) (quoting *Valentine v. Konteh*, 395 F.3d 626, 634-635 (6th Cir. 2005)). Whether a defendant is at risk of being convicted multiple times for the same conduct depends on whether the evidence at trial supports multiple distinguishable counts. *Tafoya*, 2010-NMCA-010, ¶¶ 24, 25 ("[I]t is the evidence admitted at trial that must be reevaluated by the district court to determine whether a criminal charge is sufficient to satisfy the due process requirements under *Dominguez.*").

{20} Child testified that Defendant had sex with her when she was eleven years old and when she was twelve years old. Although at one point she stated she could not remember a specific instance in each of those years, at another point in her testimony she testified about a specific instance of sexual abuse after her grandmother died, including the location of the incident, details about which family members were in the house at the time, what she and Defendant were drinking at the time, and what they were doing before the sexual activity began. She also testified that Defendant had sex with her "more than once" when she was eleven and "more than one time" when she was twelve. In addition, she testified that Defendant began having sex with her when she was seven years old and continued until she was thirteen years old. Child also stated that the sexual abuse occurred in different locations, designated at trial as "the

14

two-story house" (where Defendant lived) and "the blue house" (where Child lived). A number of witnesses testified about the dates that Child lived in the blue house and visited the two-story house, as well as the dates that Defendant lived in the two-story house. Although there are some conflicts in the testimony, it appears that at least a portion of the charging period overlaps with these periods, which themselves overlap with Child's eleventh and twelfth years. *See State v. Sena*, 2008-NMSC-053, ¶ 11, 144 N.M. 821, 192 P.3d 1198 (stating that appellate courts must assume the trier of fact resolved conflicts in the testimony in favor of the prevailing party).

{21} This testimony is sufficient to satisfy due process. Child's testimony about a specific incident of sexual penetration supports a single CSPM count. Her testimony about a pattern of conduct in addition to that incident supports another CSPM count. The State also distinguished between the two CSPM counts through Child's testimony that Defendant had sex with her multiple times in each of her eleventh and twelfth years, which indicates a pattern of conduct in each year. Thus, the evidence at trial sufficiently distinguished between the two CSPM counts on either of these bases. *See State v. Altgilbers*, 109 N.M. 453, 466, 786 P.2d 680, 693 (Ct. App. 1989) (stating that the State is not required to choose "between either one count in toto or one count for each act" and that "[t]he charging pattern that best reconciles the community's interest in proper enforcement of the laws and the interest . . . in fairness to the defendant may

15

well be a charging pattern fitting between the two extremes."). Similarly, the two CSCM counts are distinguished by Child's testimony about a specific instance of touching preceding sexual intercourse and that "[i]t [(sexual intercourse)] pretty much happened the same way every time. He'd start with touching me, and then, that's when it progressed." Like the CSPM counts, this testimony supports one count for a specific instance and one count for a pattern of conduct. The identical CSCM and CSPM counts did not violate the prohibition against double jeopardy.

{22} Defendant's fifth argument is that the jury instructions "allowed the jury to use the same acts to support four convictions" such that "[Defendant] may have been punished multiple times for . . . the same offense." Defendant relies on *Griffin v. United States*, 502 U.S. 46 (1991) and *State v. Olguin*, 118 N.M. 91, 98, 879 P.2d 92, 99 (Ct. App. 1994), *aff'd in part, set aside in part by State v. Olguin*, 120 N.M. 740, 741, 906 P.2d 731, 732 (1995) to argue that "this Court [must] vacate all but one count of CSP[M]."

{23} When a jury instruction allows conviction on alternate theories, one of which would violate double jeopardy, the protections against double jeopardy are violated unless it is clear from the record that the jury convicted only on the adequate ground. *State v. Montoya*, 2011-NMCA-074, ¶ 39, 150 N.M. 415, 259 P.3d 820. In *Olguin*, this Court relied on *Griffin* to explain the differences between a verdict in which one

of the alternate bases is *factually* inadequate and a verdict in which one of the alternate bases is *legally* inadequate. *Olguin*, 118 N.M. at 97-98, 879 P.2d at 98-99. Reversal is not required in the former case when at least one of the bases for conviction was supported by sufficient evidence. *Id.* at 98, 879 P.2d at 99. In contrast, reversal is required when one of the bases is contrary to law, such as when "the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of the crime." *Id.* (quoting *Griffin*, 502 U.S. at 59).

{24} As discussed, the instructions for counts one and two are identical and the instructions for counts three and four are identical. Although the State's theory at trial was that one count of digital penetration and one count of sexual intercourse occurred when Child was eleven and one count of each type occurred when Child was twelve, the jury instructions all include the same twenty-one month charging period which overlaps with but does not align precisely with Child's eleventh and twelfth years. In addition, the jurors asked several questions during deliberations. Specifically, in a note to the district court, they stated, "Our issue regards the separation of [c]ounts [one and two] from [c]ounts [three and four]." They then asked, "Regarding [c]ounts [three and four], does sexual intercourse inherently include applying a force or touching the vagina of [Child]?" and "Regarding [c]ounts [one and two], is sexual contact limited to touching or applying a force by hand?" The district court refused

defense counsel's request to instruct the jury that counts one and two required them to find that Defendant had touched Child by hand and instead told the jury to rely on the instructions already given.

{25} Defendant argues that these questions indicate that the jury "was considering convicting [Defendant] for CSC[M] based on something other than a manual touching, which under the testimony provided them would be the touching inherent in the sexual intercourse for which they separately convicted him in [c]ounts [three] and [four]." He maintains there is no contrary evidence from which to "dismiss the . . . possibility" that the jury convicted Defendant "four times for the same conduct." Defendant overstates the situation. At most, the jurors' questions might be read to indicate that they questioned whether Defendant could be convicted twice for CSCM for touching inherent in the two sexual intercourse counts. These questions would imply at most two possible duplicate convictions, not three, as Defendant argues. In any case, we do not agree that any of the convictions require reversal. Even if we accept Defendant's argument that the jury convicted him of CSCM based on touching associated with sexual intercourse, we have determined that such a verdict does not violate double jeopardy and is, therefore, not legally inadequate. *See Pisio*, 119 N.M. at 261, 889 P.2d at 869.

{26}   In his final argument, Defendant contends that, should this Court decline to vacate both CSCM convictions and one CSPM conviction on the grounds discussed above, we should at least vacate the CSCM convictions because the jury's questions indicated "an intolerable quantum of confusion" in the deliberations. *See State v. DeSantos*, 89 N.M. 458, 462-63, 553 P.2d 1265, 1269-70 (1976). To the extent Defendant's argument is that the jury was confused as to whether they could convict Defendant for CSCM based on touching inherent in sexual intercourse, we have concluded that the verdict was not inappropriate because it was not error to do so. Defendant does not elaborate on other ramifications of the alleged confusion nor direct us to alternate authority. "We decline to review such an undeveloped argument." *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076.

{27}   Finally, we note the extraneous commentary in the State's answer brief and caution advocates to avoid language that is overly dramatic, snide, and/or belittling of opposing counsel's arguments because it is both unnecessary and unhelpful. *See Hagen v. Faherty*, 2003-NMCA-060, ¶ 21, 133 N.M. 605, 66 P.3d 974 ("We think the parties' arguments in this case could have been made more effectively if they were less strident and more tailored as a logical refutation of the other side's arguments.").

**CONCLUSION**

19

{28} Having found no reversible error in the district court, we affirm Defendant's convictions.

{29} **IT IS SO ORDERED.**

_____

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**RODERICK T. KENNEDY, Chief Judge**

_____

**J. MILES HANISEE, Judge**