This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37986**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**LOUISE BILLIE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Christina P. Argyres, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Luz C. Valverde, Assistant Appellate Defender
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}** Louise Billie (Defendant) appeals her convictions for one count of armed robbery, contrary to NMSA 1978, Section 30-16-2 (1973) and NMSA 1978, Section 31-18-16 (1993, amended 2020), and two counts of conspiracy to commit armed robbery, contrary to NMSA 1978, Section 30-28-2 (1979) and Section 30-16-2. On appeal Defendant argues: (1) the district court abused its discretion in denying her motion for a mistrial; (2) her convictions for conspiracy to commit armed robbery violate double

jeopardy; (3) her 2007 conviction could not be used to enhance the sentences for each of her felony convictions under NMSA 1978, Section 31-18-17 (2003) (habitual offender statute), and therefore, her sentence is illegal; or (4) alternatively counsel was ineffective for failing to rebut the evidence the State relied on to enhance her sentence. We accept Defendant's second argument and therefore reverse one of her conspiracy convictions but affirm in all other respects.

## BACKGROUND

**{2}** A grand jury indicted Defendant on a number of charges including two counts of armed robbery and two counts of conspiracy to commit armed robbery related to robberies of a Taco Bell and a Jack in the Box occurring on the same day. [1] Relevant to these charges the State alleged that Defendant drove her husband, Robert Billie, in a black SUV to the Taco Bell where he used a gun to rob the restaurant. After fleeing from the Taco Bell robbery, officers with the Albuquerque Police Department located the black SUV and identified Defendant as the driver. Officers observed Defendant and her husband return to a motel room where they stayed for approximately five hours before leaving again in the black SUV.

**{3}** After leaving the motel, Defendant and her husband stopped at three separate fast food restaurants before arriving at the Jack in the Box where Defendant's husband robbed the restaurant. Officers followed Defendant as she and her husband fled the robbery in the black SUV but lost track of the vehicle during the pursuit. Officers eventually relocated the black SUV at the motel where officers observed it earlier in the day. Upon locating the SUV, officers secured the area and instructed Defendant and her husband to exit the motel room. Defendant and her husband exited the motel room at which point Defendant's husband raised a weapon toward the officers who then fired non-lethal rounds at him. Defendant's husband fled in the black SUV and officers arrested Defendant.

**{4}** Defendant's jury trial for armed robbery and conspiracy to commit armed robbery took place over a period of three days during which ten witnesses testified, including employees from each restaurant and officers involved in the investigation and arrest of Defendant. The jury acquitted Defendant on the charge of armed robbery of the Taco Bell but convicted her for armed robbery of the Jack in the Box and both conspiracy charges.

**{5}** The district court determined that Defendant was a habitual offender for the purpose of sentence enhancement and increased Defendant's sentence for each charge accordingly. This appeal followed.

**{6}** We reserve discussion of facts relevant to Defendant's claims where appropriate in our analysis.

---

1Other than the two armed robbery charges and conspiracy to commit armed robbery charges, the State dropped all other charges against Defendant prior to trial.

**DISCUSSION**

**{7}** We first address Defendant's assertion that the district court abused its discretion in denying her motion for mistrial. Next, we analyze whether Defendant's conviction on two counts of conspiracy to commit armed robbery violate her right to be free from double jeopardy. Finally, we address the legality of Defendant's sentence.

**The District Court Did Not Abuse Its Discretion in Denying Defendant's Motion for Mistrial**

**{8}** We review the district court's denial of a motion for mistrial for abuse of discretion. *State v. Ruiz*, 2003-NMCA-069, ¶ 6, 133 N.M. 717, 68 P.3d 957. A district court abuses its discretion when it acts "in an obviously erroneous, arbitrary, or unwarranted manner[,]" *State v. Fry*, 2006-NMSC-001, ¶ 50, 138 N.M. 700, 126 P.3d 516 (internal quotation marks and citation omitted), or "when the decision is clearly against the logic and effect of the facts and circumstances before the court." *State v. Hernandez*, 2017-NMCA-020, ¶ 14, 388 P.3d 1016 (internal quotation marks and citation omitted).

**{9}** Defendant argues that a mistrial was necessary because the jury heard testimony regarding an ongoing investigation of robberies occurring prior to those charged, and that testimony violated Rule 11-404(B)(1) NMRA's prohibition against propensity evidence. Defendant asserts that this testimony was uniquely prejudicial because identity was a central issue of this case and contends that the State's reckless questioning should be construed as intentionally eliciting prohibited testimony. The State responds that it did not intentionally elicit prohibited testimony but that even if it had, the district court appropriately denied Defendant's motion for a mistrial because the testimony was not substantially likely to cause a miscarriage of justice or induce the jury's verdict.

**{10}** Defendant first raised an issue regarding the officers' investigation into prior robberies involving Defendant or her SUV on the morning of trial while the parties were identifying exhibits the State intended to introduce through stipulation and those Defendant objected to. With regard to a photograph showing a fade mark on Defendant's SUV, defense counsel argued that the State might open the door for testimony of prior bad acts, i.e., investigations occurring before the events at issue while laying the foundation for the admission of the exhibit; "if anything we need to wait to see exactly what comes out"; and that the witnesses be instructed not to discuss uncharged crimes. The State acknowledged the risk and stated that it had advised witnesses not to discuss events occurring before the incidents at issue in the case. The State also stated that it believed use of leading questions could avoid testimony that might be prejudicial. The district court did not rule on the issue, stating instead that it would wait to see how the testimony developed. Defendant's arguments on appeal center on comments made during testimony from Detectives Church, Marquez, and Carter.

**{11}** Defendant asserts that, although Detective Carter is the only witness to specifically reference other crimes, we should consider his testimony in conjunction with comments made by Detectives Church and Marquez regarding a "prior investigation" or an "ongoing investigation." Defendant does not provide any citation to the record that establishes that she presented this argument to the district court. "To preserve error for review, a party must fairly invoke a ruling of the district court on the same grounds as argued in this Court." *Crutchfiled v. N.M. Dep't of Tax'n & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273. On the contrary, the record reveals that Defendant's motion for a mistrial was based entirely on Detective Carter's testimony.

**{12}** Moreover, Defendant's objection to Detective Church's testimony was based on hearsay. And although the district court agreed, upon Defendant's objection, that Detective Marquez's testimony was close to addressing prohibited issues, the district court did not rule on the objection. Instead, the district court granted the State's request to lead the witness and testimony resumed. Significantly, Defendant did not pursue her objection further or invoke a ruling nor did she move to strike the testimony.

**{13}** Defendant does not argue that the district court erred in its handling of these objections nor does Defendant provide authority supporting her request that in the absence of preservation, we should consider the testimony here in the aggregate rather than focusing on the testimony that precipitated Defendant's motion for a mistrial. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority.").

**{14}** In the absence of a ruling below or argument on appeal, we are not inclined to second-guess the district court's handling of evidentiary issues, thus, to the extent Defendant invites us to consider Detectives Church's and Marquez's statements as part of a larger error, we decline to do so. *See State v. Candelaria*, 2019-NMSC-004, ¶ 46, 434 P.3d 297 (declining to consider claims unsupported by argument on appeal). We turn now to Detective Carter's testimony.

**{15}** During Detective Carter's testimony, the State asked him whether he assisted in an investigation of a black SUV on March 22, 2017, to which Detective Carter responded, "I believe so." The State then asked, "What was your role in the surveillance of the black SUV?" Detective Carter sought clarification of the question asking, "So specifically on that date, is that the first time that we observed the black SUV?" The State responded, "Let's talk about that date" to which Detective Carter responded, "Detectives in our unit . . . we had been looking for a dark colored SUV." Defendant immediately objected to Detective Carter's comments and requested a bench conference where Defendant argued that the witness was about to discuss the prior investigation. The State disagreed but nevertheless agreed to lead the witness.

**{16}** Upon resumption of the examination and despite having agreed to lead the witness, the following colloquy occurred:

| State: | Alright Detective, specifically just talking about this day, how did you become involved in the surveillance? What was your role in the surveillance that day? |
|---|---|
| Det. Carter: | I had been looking for an SUV in relation to several armed robberies that had occurred throughout the city. |
| Defendant: | Objection, can we approach? |

Defendant moved for a mistrial based on Detective Carter's statements. The State argued that it did not believe the comments warranted a mistrial and suggested that a limiting instruction could resolve any issue raised by Detective Carter's response. The audio record at this point of the bench conference becomes inaudible. However, it is undisputed that the district court did not issue a curative instruction and instead instructed the State to tell the witness that he cannot talk about events prior to those at issue in the case. Upon resumption of testimony the State specifically focused Detective Carter on the events of March 22, 2017.[2] The remainder of Detective Carter's testimony continued without reference to any prior investigations.

**{17}**     With regard to Detective Carter's testimony, the State does not dispute that the Detective Carter's comments about "a series of armed robberies" introduced evidence contrary to Rule 11-404(B)(1)'s prohibition against use of propensity evidence. While we are not bound by a party's concession on appeal, we accept the concession here. *See State v. Anthony L.*, 2019-NMCA-003, ¶ 17, 433 P.3d 347 (acknowledging that this Court is not bound by the state's concession). However, our inquiry does not end here because "even if inadvertent admission of evidence of prior crimes is error, the prompt sustaining of an objection and an admonition to disregard the witness's answer cures any prejudicial effect of the inadmissible testimony." *Ruiz*, 2003-NMCA-069, ¶ 6. Conversely, if "inadmissible testimony is intentionally elicited by the prosecution . . . [o]n review, this Court must determine whether there is a reasonable probability that the improperly admitted evidence could have induced the jury's verdict." *Hernandez*, 2017-NMCA-020, ¶ 17 (alteration, internal quotation marks, and citations omitted). Therefore, we determine whether the State intentionally elicited Detective Carter's testimony.

**{18}**     The State argues that the admission of Detective Carter's testimony was inadvertent and that its offer of a curative instruction was sufficient to prevent a mistrial. Relying on *Ruiz*, Defendant argues that although it does not appear that the State intentionally elicited prohibited testimony, its use of open-ended questioning was reckless and invited the prohibited statements and should therefore be analyzed as though intentionally provoked. We disagree.

---

2Defendant points out that Detective Carter's responses to these subsequent questions were inaccurate as they described a different motel located in a different part of Albuquerque from where the events of March 22, 2017, took place. However, Defendant did not object to these comments below, and the State clarified the correct location through subsequent questioning, therefore, we do not address this issue further.

**{19}** In this case, unlike in *Ruiz*, there was no pretrial order specifically prohibiting discussion of circumstances directly related to and informing the investigation of Defendant on the day in question. While Defendant did raise concerns that the State might open the door to prior bad acts while laying the foundation for the admission of a photograph of her vehicle, the district court did not issue a blanket order on the issue but instead decided to wait to see how testimony developed. Nevertheless, the State confirmed that it had advised witnesses not to discuss such facts and the record shows that when eliciting testimony that could get into prohibited subjects, the State took precautions to avoid error. Although those precautions might have been better crafted and were not perfectly effective, the prosecutor's conduct, viewed as a whole, does not support the conclusion that the State intentionally elicited the problematic testimony. Accordingly, we conclude that the State's error was inadvertent and therefore turn to the question of whether the district court could have resolved the issue with a curative instruction. *See Ruiz*, 2003-NMCA-069, ¶ 6 ("[E]ven if inadvertent admission of evidence of prior crimes is error, the prompt sustaining of an objection and an admonition to disregard the witness's answer cures any prejudicial effect of the inadmissible testimony.").

**{20}** Upon Defendant's objection to Detective Carter's testimony, the State proposed that the district court issue a curative instruction, but the district court did not provide such an instruction. Our Supreme Court has held that "the trial court's offer to give a curative instruction, even if refused by the defendant, is sufficient to cure any prejudicial effect." *Fry*, 2006-NMSC-001, ¶ 53. Although the transcript during this bench conference is unclear, and we are unable to determine whether Defendant declined the instruction or whether other considerations informed the district court's decision not to give a curative instruction, "[w]here there is a doubtful or deficient record, every presumption must be indulged by the reviewing court in favor of the correctness and regularity of the trial court's judgment." *State v. Rojo*, 1999-NMSC-001, ¶ 53, 126 N.M. 438, 971 P.2d 829 (alteration, internal quotation marks, and citation omitted). In light of this presumption and the fact that no instruction was given despite the State's suggestion, we conclude that the offer of a curative instruction in this case was sufficient to cure any prejudicial effect of Detective Carter's testimony. Accordingly, we hold that the district court did not abuse its discretion in denying Defendant's motion for a mistrial.

## Defendant's Second Conviction for Conspiracy to Commit Armed Robbery Violates Double Jeopardy

**{21}** Defendant argues that her convictions for conspiracy to commit armed robbery of the Taco Bell and conspiracy to commit armed robbery of the Jack in the Box violate her right to be free from double jeopardy. The State argues that the fact that the robberies occurred at different locations within a five-hour time period as well as facts showing Defendant and her husband returned to their motel room between robberies and scouted other restaurants, support separate conspiracy convictions. We disagree.

**{22}** Our Federal and State Constitutions guarantee that no person shall be "twice put in jeopardy" for the same offense. U.S. Const. amend. V; N.M. Const. art. II, § 15. We

review double jeopardy claims de novo. *See State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747 ("A double jeopardy challenge is a constitutional question of law which we review de novo."). "Double jeopardy protects against both successive prosecutions and multiple punishments for the same offense." *State v. Carson*, 2020-NMCA-015, ¶ 31, 460 P.3d 54 (alteration, internal quotation marks, and citation omitted). Defendant's appeal pertains to the latter. Multiple punishment cases are classified in one of two ways: "double description cases in which a single act results in multiple charges under different criminal statutes" and "unit of prosecution cases in which an individual is convicted of multiple violations of the same criminal statute." *State v. Gallegos*, 2011-NMSC-027, ¶ 31, 149 N.M. 704, 254 P.3d 655 (alterations, internal quotation marks, and citations omitted). Because Defendant asserts that her unitary conduct resulted in multiple convictions under the same statute, we apply the unit of prosecution analysis.

**{23}** In analyzing a unit of prosecution claim, the relevant inquiry is "whether the [L]egislature intended punishment for the entire course of conduct or for each discrete act." *Swafford v. State*, 1991-NMSC-043, ¶ 8, 112 N.M. 3, 810 P.2d 1223. Our Supreme Court has previously analyzed the conspiracy statute and concluded "that based on the text, history, and purpose of our conspiracy statute the Legislature established a rebuttable presumption that multiple crimes are the object of only one, overarching, conspiratorial agreement subject to one, severe punishment set at the highest crime conspired to be committed." *State v. Comitz*, 2019-NMSC-011, ¶ 33, 443 P.3d 1130 (omissions, internal quotation marks, and citation omitted). The Court further concluded, "At trial, the state has an opportunity to overcome the Legislature's presumption of singularity, but doing so requires the state to carry a heavy burden." *Id.* (internal quotation marks and citation omitted). We apply a totality of the circumstances test "to determine the exceptional instances in which the Legislature's presumption of singularity may be overcome." *Gallegos*, 2011-NMSC-027, ¶ 56.

**{24}** Under the totality of circumstances test we consider whether "the alleged conspiracies (1) have the same location, (2) overlap significantly in time, (3) involve the same or overlapping personnel, (4) involve similar overt acts charged against the defendant, and (5) involve the defendant performing a similar role." *Comitz*, 2019-NMSC-011, ¶ 34. We may also rely on the existence of an overt act to aid in determining whether a defendant entered into multiple conspiratorial agreements. *Id.*

**{25}** Applying these factors to this case, we conclude that the State failed to meet its heavy burden to establish that this is an exceptional circumstance in which there are separate conspiracies. The alleged conspiracies involved the same overt acts of armed robbery committed by the same personnel, Defendant and her husband. As alleged by the State, Defendant, acting as the driver, performed a similar role in both robberies. The State argues that there were multiple conspiracies because the robberies occurred at different locations with different victims and that Defendant and her husband scouted other restaurants, we disagree. The fact that the robberies occurred at different locations and involved different victims is not dispositive of two separate conspiracies because "the objectives of a single agreement may change over time without such changes creating a new agreement[.]" *Gallegos*, 2011-NMSC-027, ¶ 62. For the same

reason, the fact that Defendant and her husband scouted three other fast food restaurants before robbing a Jack in the Box does little to rebut our presumption. Rather, we construe these facts as aspects of a larger continuous agreement to commit armed robberies of fast food restaurants.

**{26}**    With regard to the approximately five hours that passed between the Taco Bell robbery and the Jack in the Box robbery, we are unpersuaded that this relatively short amount of time refutes a presumption favoring a singular conspiracy. "While a six-to - eight-hour time frame might support a finding of distinctness in the context of other crimes, the time frame for conspiracy depends upon the unique nature of the crime." *Id.* ¶ 58. "Because [conspiracy] is characterized by multiple individuals who have agreed to achieve illegal objectives, a single conspiracy may take longer to develop than crimes such as criminal sexual penetration, robbery, or shooting at a motor vehicle, where group activity is not inherent to the offense and where planning and consensus building are less relevant." *Id.* ¶ 60. Again, the fact that the conspiracy included multiple restaurants over a period of time does not indicate multiple conspiracies but rather that each robbery was part of the larger continuous agreement to commit armed robberies. This is especially true in light of the other *Gallegos* factors discussed above.

**{27}**    For the same reasons we are unpersuaded that the fact that Defendant and her husband returned to the motel between robberies is a significant enough intervening factor to rebut our presumption. Indeed, in the aftermath of the first robbery any number of reasons could have caused Defendant and her husband to return to their motel room before continuing in their conspiracy, including reasons necessitating a return to the motel room to further the conspiracy, such as switching license plates. The State does not point to any evidence that Defendant's time in the motel room between robberies was a significant enough break in events to rebut our presumption of one overarching conspiracy. *Cf. State v. Bahney,* 2012-NMCA-039, ¶¶ 11, 19, 274 P.3d 134 (concluding that the defendant formed one overarching agreement despite intervening events including a forty-five-minute trip to Walmart); *Gallegos*, 2011-NMSC-027, ¶¶ 12, 58, 64 (concluding that the defendant's multiple conspiracy convictions violated double jeopardy despite the fact that over the course of seven hours defendant also visited an Allsup's).

**{28}**    To the extent the State relies on the fact that each conspiracy charge was premised on an agreement to rob distinct establishments, we emphasize that the State's heavy burden to overcome the Legislature's presumption of singularity is not met by the crafting of charges but through evidence. And, while the State argues that the criminal actions or goals of each conspiracy were not mutually dependent, the lack of mutual dependence is not dispositive of this issue, which is best analyzed through the factors articulated in *Gallegos*.

**{29}**    Based on the foregoing, we conclude that Defendant's actions were part of one, overarching conspiratorial agreement and hold that Defendant's multiple conspiracy convictions violate double jeopardy. Accordingly, we vacate one of Defendant's conspiracy convictions.

**Defendant Has Not Demonstrated That the District Court Erred by Sentencing Her as a Habitual Offender**

**{30}**  Defendant argues that that her sentence in this case is illegal because the district court relied on insufficient evidence to warrant enhancement under the habitual offender statute, Section 31-18-17(B). Specifically, Defendant asserts that she completed parole for her conviction for possession of a controlled substance, more than ten years prior to her convictions in this case. In support of her argument, Defendant asserts that the "good time figuring sheet" presented by the State shows that her parole ended in early May 2008, placing the conviction just beyond the ten-year cutoff for sentence enhancement. The State counters that Defendant miscalculates the good time awarded on the good time figuring sheet and that sufficient evidence supports the enhancement of Defendant's sentence.

**{31}**  To the extent Defendant challenges the evidence supporting her habitual offender enhancement, we apply a substantial evidence standard of review. *State v. Bailey*, 2008-NMCA-084, ¶ 23, 144 N.M. 279, 186 P.3d 908. However, we review the district court's interpretation and application of sentencing laws de novo. *State v. Yazzie*, 2018-NMCA-001, ¶ 9, 410 P.3d 220.

**{32}**  To enhance Defendant's sentence for prior felonies under Section 31-18-17, the State must prove by a preponderance of the evidence (1) Defendant is the same person, (2) Defendant has been convicted of the prior felony, and (3) less than ten years has passed since Defendant completed serving his sentence, probation, or parole for the felony. *See State v. Clements*, 2009-NMCA-085, ¶ 22, 146 N.M. 745, 215 P.3d 54; *State v. Smith*, 2000-NMSC-005, ¶ 9, 128 N.M. 588, 995 P.2d 1030 ("[W]e have held that application of the preponderance standard at sentencing generally satisfies due process." (internal quotation marks and citation omitted)). Defendant does not challenge the State's evidence as to the first two requirements; she argues only that the evidence does not suffice as to the third.

**{33}**  To support the enhancement of Defendant's sentence under the habitual offender statute, the State presented a "good time figuring sheet" indicating that Defendant was discharged from parole for a prior conviction on August 7, 2008. Based on this evidence, the district court found that Defendant's previous conviction was within ten-year lookback period for enhancement under the habitual offender statute.

**{34}**  Defendant's arguments are in large part premised on a "good time figuring sheet" entered as an exhibit during her sentencing hearing. Specifically, Defendant challenges the calculation of credits related to her conviction for possession of a controlled substance. Defendant asserts that when accounting for the credits listed in the exhibit, as well as additional credits under NMSA 1978, Section 33-2-34 (2015), her parole for the underlying offense *should have* ended prior to May 18, 2008, which was the cutoff for use of the conviction to enhance her sentence in this case. Although Defendant presents her arguments as a challenge to the district court's habitual offender finding, the crux of her arguments challenge whether she was entitled to more good time credit.

Defendant does not explain how her arguments present a viable issue for our review nor does she present authority to support such a conclusion. However, even if we assume, without deciding, that this type of challenge is viable, our review of the exhibit as well as Section 33-2-34 yields a different conclusion.

**{35}**    The exhibit catalogues credits earned and forfeited by Defendant, which in turn affects her discharge date. The exhibit indicates that Defendant began parole on October 26, 2007, which at that time was scheduled to end on October 13, 2008. During her parole period, Defendant earned one month and thirty-six days of credit resulting in her parole ending on August 7, 2008.

**{36}**    Defendant asserts, however, that in addition to the credits listed in the exhibit, she was entitled to one-for-one good time credit for the four months of parole served while incarcerated at the New Mexico Women's Correctional Facility (NMWCF), pursuant to Section 33-2-34(A)(2), and a credit of four days per month for the time served in federal custody pursuant to Section 33-2-34(A)(3). Defendant's reliance on these sections is unavailing, we explain.

**{37}**    Section 33-2-34(A) sets out the rate at which prisoners may earn good time credit and provides in relevant part that:

> (2)    for a prisoner confined for committing a nonviolent offense, *up to* a maximum of thirty days per month of time served;
>
> (3)    for a prisoner confined following revocation of parole for the alleged commission of a new felony offense or for absconding from parole, *up to* a maximum of four days per month of time served during the parole term following revocation[.]

(Emphases added.) However, "unlike mandatory credits . . . the deduction of goodtime credits from an inmate's sentence is a discretionary matter entrusted not to the courts but to the administrators of the Corrections Department or the county jails." *State v. Aqui*, 1986-NMSC-048, ¶ 9, 104 N.M. 345, 721 P.2d 771. Thus, a prisoner serving part of her parole while incarcerated may receive up to a one-for-one reduction of her sentence in good time credit, but she may receive no credit. Likewise, a prisoner incarcerated pursuant to a new offense may receive up to four days per month in good time credit, but she might receive no credit.

**{38}**    Applying this understanding to the facts here, the exhibit shows that during the four months of parole that Defendant served while incarcerated at NMWCF, she earned 1.36 credits, or approximately two months and six days of credit. While Defendant could have earned up to a full one-for-one credit for each month of incarceration, she is not entitled to such a credit as her arguments on appeal imply. Likewise, the exhibit does not show that Defendant earned any credit while in federal custody. Again, while Defendant could have earned up to four days of credit per month in federal incarceration, she is not entitled to any credit let alone the maximum amount as argued

in her brief. Thus having determined that Defendant was not entitled to any more credit than the amount included in the exhibit, and having concluded that the exhibit evidences that Defendant's parole ended in August 2008, we hold that sufficient evidence supports Defendant's enhanced sentence.

**{39}** Because we conclude the evidence presented sufficiently supported the enhancement of Defendant's sentence, we are unpersuaded by Defendant's argument that trial counsel's failure to proffer evidence to rebut use of Defendants prior conviction amounted to ineffective assistance of counsel. *Cf. State v. Chandler*, 1995-NMCA-033, ¶ 35, 119 N.M. 727, 895 P.2d 249 (stating that failing to file a motion that would prove futile does not constitute ineffective assistance of counsel), *modified on other grounds by State v. Vargas*, 2007-NMCA-006, ¶ 14, 140 N.M. 864, 149 P.3d 961. However, our holding does not prevent Defendant from pursuing her claim in a separate habeas corpus proceeding. On direct appeal our review is limited to the record before us. "Because we usually have insufficient information before us to evaluate an ineffective assistance claim on direct appeal, as in this case, [the appellate courts prefer] that these claims be brought under habeas corpus proceedings so that the defendant may actually develop the record with respect to defense counsel's actions." *State v. Samora*, 2013-NMSC-038, ¶ 23, 307 P.3d 328 (internal quotation marks and citation omitted).

**CONCLUSION**

**{40}** For the forgoing reasons, we affirm Defendant's convictions and sentences for armed robbery and one count of conspiracy to commit armed robbery. We reverse Defendant's other conviction for conspiracy to commit armed robbery and remand this case to the district court for resentencing in accordance with this opinion.

**{41}   IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**SHAMMARA H. HENDERSON, Judge**